CARL M. DUNHAM, JR. *v.* ROGER S. DUNHAM
(14280)

SHEA, CALLAHAN, COVELLO, BORDEN and BERDON, Js.

Argued November 8, 1991—decision released March 10, 1992

*Michael E. Grossmann,* with whom, on the brief, was *Timothy Brignole,* for the appellant (defendant).

*Norman J. Voog,* with whom, on the brief, was *Allen Gary Palmer,* for the appellee (plaintiff).

COVELLO, J. This is an action for trespass to real property seeking damages and an injunction based upon the defendant's alleged unlawful use of the plaintiff's airport located in New Milford. The dispositive issue on appeal is whether the doctrine of res judicata acts as a bar to the prosecution of the counterclaim. We conclude that it does and, therefore, we affirm the judgment of the trial court that so concluded.

The plaintiff, Carl M. Dunham, Jr., and defendant, Roger S. Dunham, are brothers. This is the third suit[1] in their ongoing litigation concerning conflicting claims to the ownership of certain real property originally belonging to their deceased father and mother.[2] The plaintiff commenced this action alleging that the defendant had unlawfully entered the plaintiff's airport property located in New Milford. The plaintiff sought

---

[1] See *Dunham* v. *Dunham,* 217 Conn. 24, 584 A.2d 445 (1991), and *Dunham* v. *Dunham,* 204 Conn. 303, 528 A.2d 1123 (1987).

[2] The multigenerational character of this seemingly endless dispute is similar to the eternal Chancery proceedings in *Jarndyce* v. *Jarndyce.* See C. Dickens, Bleak House (1853).

damages for trespass and also for his loss of use of the property. The plaintiff also sought damages for the defendant's failure to release an attachment and judgment lien on the property that he caused to be placed on the New Milford land records. In a plea to the court's equitable jurisdiction, the plaintiff sought to enjoin the defendant's low level acrobatic flying over the airport property, his erection of additional buildings on the premises, and an order directing the removal of certain buildings that the defendant had already built on the property. Finally, the plaintiff sought damages for libel.

The defendant filed an answer, several special defenses and a counterclaim. In the counterclaim, the defendant alleged that: (1) the plaintiff had acquired title to the airport in 1974 from their mother, Jessica Scott Dunham; (2) the plaintiff had represented to their mother that he would hold the property for the benefit of the defendant; (3) the plaintiff had paid nothing for the property; (4) the transfer to the plaintiff was the product of undue influence exercised by the plaintiff; (5) the plaintiff held title to the property as constructive trustee for the defendant's benefit; and (6) the plaintiff's attempts to assert a claim to exclusive ownership of the premises constituted a breach of a fiduciary duty owed to the defendant. By way of relief, the defendant sought: (1) a decree declaring that the plaintiff was a constructive trustee for the benefit of the defendant; (2) a decree ordering the plaintiff to convey the property to the defendant; (3) an accounting; and (4) exemplary damages.

The plaintiff filed an answer and a series of special defenses to the counterclaim alleging that the subject matter of the defendant's counterclaim had been previously litigated between the parties and determined by

a judgment in the plaintiff's favor. The special defenses claimed, inter alia, that the prior judgment was an absolute bar to subsequent action on the same claims. In his reply, the defendant denied the allegations of the special defenses.

The plaintiff moved for summary judgment with respect to the counterclaim. The trial court granted the motion, concluding that the issues sought to be raised therein were barred by: (1) the doctrine of res judicata;[3] (2) laches; and (3) the three year statute of limitations contained in General Statutes § 52-577.[4] The trial court further concluded that the defendant lacked standing to pursue the issues raised in the counterclaim. The trial court subsequently rendered judgment for the plaintiff on the defendant's counterclaim. The defendant appealed to the Appellate Court.[5] We thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.

On appeal, the defendant asks us, inter alia, to reverse the judgment of the trial court because the doctrine of res judicata does not bar his litigating the matters raised in his counterclaim. We agree with the trial court that res judicata bars the counterclaim.[6]

---

[3] The defense of res judicata must be specially pleaded. See Practice Book § 164.

[4] General Statutes § 52-577 provides: "ACTION FOUNDED UPON A TORT. No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[5] Practice Book § 4002 (c) provides in part: "When more than one count is presented in a . . . counterclaim . . . a summary judgment upon only those counts which are directed against a party against whom no relief is sought in the remaining counts of the . . . counterclaim . . . shall constitute a final judgment." The summary judgment in this instance becomes, therefore, an appealable matter notwithstanding the pendency of the original action.

[6] Because we conclude that res judicata bars the pursuit of the matters raised in the defendant's counterclaim, we do not address the issues pertaining to laches and the statute of limitations.

In *Dunham* v. *Dunham,* 204 Conn. 303, 305, 528 A.2d 1123 (1987) (*Dunham I*), we took up the first lawsuit between the same two parties, which we characterized as "concerning the validity of probate proceedings and *inter vivos transfers of family property.*" (Emphasis added.) In that case, the present defendant, Roger S. Dunham, was the plaintiff. His complaint in that suit was in three counts. The first count asked the court to use its equitable powers: (1) to set aside the will of Jessica Dunham; (2) to set aside the probate decree admitting the will to probate; and (3) *to impose a constructive trust on all of the lands of Jessica Dunham now owned by the defendant whether received by will or otherwise.*

The second count claimed a breach of contract. Paragraph 16 alleged that "[a]t all times during Jessica Dunham's life, she repeatedly declared to [Roger Dunham] and others that it was her wish and understanding that the airport land would be conveyed to [Roger Dunham] upon and subsequent to her death." Paragraph 17 claimed, inter alia, that "[Carl Dunham] continuously withheld and concealed from [Roger Dunham] that the airport land was, in fact, not included within the estate of Jessica Dunham, having been ostensibly conveyed by Jessica Dunham to [Carl Dunham] by a deed dated April 3, 1974, but not recorded on the land records until October 13, 1978, ten days prior to Jessica Dunham's death."

The third count claimed legal malpractice. Paragraph 22 alleged Carl Dunham's wrongful conduct. It stated that "while acting as attorney for the late Jessica Dunham, the estate of the late Jessica Dunham, and [Roger Dunham], all at the same time, [Roger Dunham] has been grievously harmed and damaged in the following respects . . . *h. The wrongful conduct of [Carl Dun-*

ham] in securing the alleged transfer of the airport land from Jessica Dunham, which was a product entirely of his own self-interest and was inconsistent with the interest of his clients, greatly diminished the value of the estate of Jessica Dunham and was intended to hinder [Roger Dunham] in pursuing his claim to the airport land . . . . " (Emphasis added.)

Carl Dunham denied the material allegations of the complaint. Thus, within the framework of the pleadings in *Dunham I*, all of the circumstances attending Jessica Dunham's 1974 transfer of the so-called airport property were placed in issue. Within the context of what was pleaded, this either included, or could have included, her state of mind at the time of the transfer, the consideration paid for the property and whether Carl Dunham exercised undue influence in connection with the transaction.

Not only did the pleadings in *Dunham I* present the same issues raised in the counterclaim here, our examination of the record in that case discloses that those issues were actually litigated in that case. In *Dunham I,* we concluded that the jury might reasonably have found, inter alia, that "[i]n 1974, Jessica Dunham conveyed to [Carl Dunham] 300 acres of the property she had inherited from the estate of her late husband.[7] [Carl Dunham], a member of the bar of this state, acting as Jessica Dunham's lawyer, prepared all of the documentation in connection with the transaction. That

---

[7] "For purposes of [the *Dunham I*] appeal, the relevant terms of the transaction [were] as follows. The ostensible consideration for the conveyance was approximately $358,000. [Carl Dunham], however, paid no money to Jessica Dunham for the property. Instead, he assumed certain mortgages totaling about $52,000 and another $50,000 in unsecured debts owed by her. In connection with that transaction, [Carl Dunham] also gave her a promissory note for $256,627.75, but [he] never paid any money on that note." *Dunham* v. *Dunham,* 204 Conn. 303, 306 n.1, 528 A.2d 1123 (1987).

conveyance included the family residence, the inn, *the airport,* and the office building in which [Carl Dunham] conducted his law practice. [Emphasis added.]

"In 1978, Jessica Dunham executed, in [Carl Dunham's] law office, a will that he had drafted for her. This will left her net residuary estate after taxes, approximately $30,000, to be divided equally among her three children. It also appointed [Carl Dunham] the executor of her estate, forgave and canceled all indebtedness of [Carl Dunham] to Jessica Dunham, and exercised in favor of [Carl Dunham] the power of appointment created by the will of Carl Dunham, Sr., thereby ensuring that [Carl Dunham] would inherit the remaining 600 acres of property that Jessica Dunham had received under Carl Dunham, Sr.'s will. . . .[8]

"Jessica Dunham died of cancer on October 23, 1978. On October 31, 1978, [Carl Dunham] asked [Roger Dunham] to come to his office to discuss the administration of their mother's estate. During that meeting, [Carl Dunham] asked [Roger Dunham] to sign several documents to facilitate the administration of the estate. [Roger Dunham], in turn, expressed interest in acquiring title to the airport, which originally had been part of Carl Dunham, Sr.'s estate. *He expected to inherit that property because the operation of the airport had been his domain and, on the basis of conversations he had had with his mother, he had understood that property to be part of his inheritance from her estate.* [Carl Dun-

---

[8] "Jessica Dunham sent a letter, dated August 24, 1978, to [Roger Dunham] concerning the disposition of the Dunham property. She stated in the letter that she was conveying all of the property to [Carl Dunham], who would manage it, 'in order to have one person in charge.' She also expressed her conviction that [Carl Dunham] would 'be fair' and that her three children would work out any differences of opinion that might arise as a result of this arrangement." *Dunham* v. *Dunham,* 204 Conn. 303, 306 n.2, 528 A.2d 1123 (1987).

ham] replied that they would 'have to start thinking about' arrangements for the transfer of the airport property. The parties had several similar discussions about the airport property on subsequent occasions. At no time during those discussions, however, did [Carl Dunham] disclose that, as of 1974, he himself held title to the airport, and that under the terms of Jessica Dunham's will, he had acquired absolute fee simple title to the remainder of the property in their mother's estate." (Emphasis added.) *Dunham I,* supra, 305–307.

At the close of the plaintiff's case in *Dunham I,* the trial court granted Carl Dunham's motion for a directed verdict with respect to the second (breach of contract) and third (legal malpractice) counts of the complaint. The jury thereafter responded affirmatively to Roger Dunham's interrogatories concerning undue influence in connection with the execution of the will.[9] The trial court then rendered judgment in favor of Roger Dunham with respect to the first count and entered a decree setting aside the admission of Jessica Dunham's will to probate. On appeal, we affirmed the judgment.

Our rules of res judicata are based on the public policy that "a party should not be able to relitigate a matter which it already has had an opportunity to litigate." *In re Juvenile Appeal (83-DE),* 190 Conn. 310, 318, 460 A.2d 1277 (1983). From our examination of the record in *Dunham I,* we conclude that the defendant's claims of constructive trust, lack of consideration and undue influence in connection with the transfer of the airport property were either addressed or could have been addressed within the framework of the pleadings in the earlier action. " 'The doctrine of res judicata provides that a former judgment serves as an absolute bar to

---

[9] There were no interrogatories submitted to the jury concerning the circumstances attending the 1974 transfer of the airport property.

a subsequent action involving any claims relating to such cause of action which were actually made or which might have been made.' *Gagne* v. *Norton,* 189 Conn. 29, 32, 453 A.2d 1162 (1983)." *Statewide Grievance Committee* v. *Presnick,* 216 Conn. 135, 138–39, 577 A.2d 1058 (1990).[10]

---

[10] "The principles that govern res judicata are described in Restatement (Second), Judgments (1982). The basic rule is that of § 18, which states in relevant part: 'When a valid and final personal judgment is rendered in favor of the plaintiff: (1) [t]he plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment . . . .' As comment (a) to § 18 explains, '[w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be "merged" in the judgment.' Our recent case law has uniformly approved and applied the principle of claim preclusion or merger. See *Gagne* v. *Norton,* 189 Conn. 29, 32, 453 A.2d 1162 (1983); *Corey* v. *Avco-Lycoming Division,* [163 Conn. 309, 317, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973)].

"Because the operative effect of the principle of claim preclusion or merger is to preclude relitigation of the 'original claim,' it is crucial to define the dimensions of that 'original claim.' The Restatement (Second), Judgments provides, in § 24, that 'the claim [that is] extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' In amplification of this definition of 'original claim,' § 25 of the Restatement (Second) states that '[t]he rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) [t]o present evidence or grounds or theories of the case not presented in the first action, or (2) [t]o seek remedies or forms of relief not demanded in the first action.'

"The transactional test of the Restatement provides a standard by which to measure the preclusive effect of a prior judgment, which we have held to include 'any claims relating to the cause of action which were actually made or might have been made.' *Corey* v. *Avco-Lycoming Division,* supra, 317; *Gagne* v. *Norton,* supra, 32. In determining the nature of a cause of action for these purposes, we have long looked to the 'group of facts which

The judgment is affirmed.

In this opinion the other justices concurred.

is claimed to have brought about an unlawful injury to the plaintiff'; *Bridge-
port Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 197, 91 A.2d 778 (1952);
and have noted that '[e]ven though a single group of facts may give rise
to rights for several different kinds of relief, it is still a single cause of action.'
Id." *Duhaime* v. *American Reserve Life Ins. Co.,* 200 Conn. 360, 364–65,
511 A.2d 333 (1986).