PAUL LEGASSEY *v.* RALPH M. SHULANSKY,
COMMISSIONER OF BANKING

ROGER MORGAN *v.* RALPH M. SHULANSKY,
COMMISSIONER OF BANKING
(10828)

DALY, LAVERY and FREEDMAN, Js.

Argued June 9—decision released August 18, 1992

*Rodger C. Boe,* for the appellants (plaintiffs).

*William J. Prensky,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

LAVERY, J. The plaintiffs, Paul Legassey and Roger Morgan, bring this appeal challenging the dismissal of

their motions to quash subpoenas served on their banks by the defendant commissioner of banking (commissioner). The commissioner sought the disclosure of the plaintiffs' financial records in furtherance of an investigation into the plaintiffs' possible violations of the Connecticut Uniform Securities Act, General Statutes § 36-470 et seq. The trial court found that the plaintiffs had filed their applications to quash in an untimely manner, and were therefore barred from maintaining a cause of action to quash in accordance with General Statutes § 36-9*l* (b).[1] We take judicial notice of the file in *Morgan* v. *Brown,* 219 Conn. 204, 592 A.2d 925 (1991), and sua sponte[2] hold that the plaintiffs' applications to quash, that gave rise to this appeal, were barred by the doctrine of res judicata.[3]

The record and briefs reveal the following relevant facts and procedural history of this case. General Statutes § 36-495 (a) grants the banking commissioner the authority to conduct investigations into possible violations of the Connecticut Uniform Securities Act

[1] General Statutes § 36-9*l* (b) provides: "A customer of a financial institution shall have standing to challenge a subpoena of his financial records, by filing an application or motion to quash in a court of competent jurisdiction within the ten-day notice period required by subsection (a) of this section. Upon the filing of such application or motion by the customer, and service of such application or motion upon the financial institution and the person issuing the subpoena, production of the records shall be stayed, without liability to the financial institution, until the court holds a hearing on the motion or application and an order is entered sustaining, modifying or quashing the subpoena."

[2] " ' 'Our rules of res judicata are based on the public policy that a "party should not be allowed to relitigate a matter which it already has had an opportunity to litigate." . . . "[T]he purpose of a law suit is not only to do substantial justice but to bring an end to controversy." ' " (Citations omitted.) *Orselet* v. *DeMatteo,* 206 Conn. 542, 550, 539 A.2d 95 (1988).

[3] This court may take judicial notice of court files in another suit between the same parties, "especially when the relevance of that litigation was expressly made an issue at this trial." *McCarthy* v. *Warden,* 213 Conn. 289, 293, 567 A.2d 1187 (1989), cert. denied, 496 U.S. 939, 110 S. Ct. 3220, 110 L. Ed. 2d 667 (1990).

(CUSA), General Statutes § 36-470 et seq. Section 36-495 (b) confers on the commissioner the authority to subpoena witnesses and to require the production of books, papers, correspondence, memoranda, agreements, and other records or documents that may be relevant to his investigation.

Acting on a complaint, the commissioner began an investigation into the sale of units in four limited partnerships to determine whether there had been, or would be, any violations of CUSA. The investigative trail led to the plaintiffs' bank accounts, to a financial entity known as Omni Group, Inc., and to Paul J. Legassey client's fund accounts. On April 24, 1990, the commissioner ordered that four subpoenas duces tecum be served on four different banks, requiring the banks to produce certain financial records of the plaintiffs. On May 16, 1990, the plaintiffs' separately filed applications to quash the subpoenas. The plaintiffs challenged the subpoenas in accordance with General Statutes § 36-9l, which gives bank customers the right to file an application to quash a subpoena served on the customer's bank.[4] After a short trial, the court granted the plaintiffs' motions to quash because of certain defects in the service of the subpoenas. The commissioner appealed the decision of the trial court, and the Supreme Court reversed the granting of the plaintiffs' motions to quash on June 18, 1991, in *Morgan* v. *Brown,* supra. On July 31, 1991, the trial court dismissed the applications to quash in accordance with the Supreme Court decision.

On July 19, 1991, each plaintiff filed a second application to quash the subpoenas. The trial court dismissed the second applications to quash as untimely in November, 1991. The plaintiffs appeal from the trial court's dismissal of the second applications, contending that they were indeed timely.

---

[4] See footnote 1, supra.

Despite the plaintiffs' claim that their second applications were timely, and that their cause of action was preserved by General Statutes § 52-592 (a), the dismissal of the first applications was a judgment on the merits, and, therefore, the plaintiffs' second applications were barred by the doctrine of res judicata.

Res judicata is a doctrine grounded in public policy. Its primary function is to prevent the relitigation of issues already decided in a court of competent jurisdiction. *Dunham* v. *Dunham,* 221 Conn. 384, 391, 604 A.2d 347 (1992); *In re Juvenile Appeal (83-DE),* 190 Conn. 310, 318, 460 A.2d 1277 (1983); *Corey* v. *Avco Lycoming Division,* 163 Conn. 309, 316–17, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); *Brady* v. *Anderson,* 110 Conn. 432, 435, 148 A. 365 (1930). The doctrine of res judicata provides that a former judgment serves as an absolute bar to a subsequent action involving any claims relating to such cause of action that were actually made or that might have been made. *Gagne* v. *Norton,* 189 Conn. 29, 32, 453 A.2d 1162 (1983).

Connecticut's res judicata rules are derived from the theory of merger and the transactional test set out in the Restatement (Second) of Judgments. *Dunham* v. *Dunham,* supra, 392–93 n.10; *Vakalis* v. *Kagan,* 18 Conn. App. 363, 557 A.2d 1285 (1989). Merger, or the extinguishing of the plaintiffs' original claims through the rendering of final judgment, has its roots in early case law. *Fisher, Brown & Co.* v. *Fielding,* 67 Conn. 91, 118–19, 34 A. 714 (1895) (*Hammersley, J.,* dissenting). "When the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be 'merged' in the judgment." 1 Restatement (Second), Judgments § 18.

"The transactional test measures the preclusive effect of a prior judgment, which includes any claims relating to the cause of action that were actually made or might have been made." *Vakalis* v. *Kagan,* supra, 367. A cause of action for the purpose of the transactional test is " 'the group of facts which is claimed to have brought about an unlawful injury to the plaintiff'; *Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 197, 91 A.2d 778 (1952) . . . ." *Dunham* v. *Dunham,* supra.

The present case presents a clear example of the type of relitigation that the doctrine of res judicata is designed to prevent. In May, 1990, the plaintiffs brought their first applications to quash the subpoenas on the following six grounds:

"A. The attempted service of the subpoenas did not comply with the requirements of the statutes and other legal authority governing said service.

"B. The respondent attempted to induce the . . . banks to provide financial records in violation of the governing statutory provisions.

"C. The respondent attempted service of said subpoenas while concurrently proceeding with his appeal of a prior pending action involving the same facts and circumstances.

"D. Compliance with said subpoenas would violate the applicant's right of privacy and his rights under the 4th, 5th, and 14th amendments of the United States Constitution, as well as provisions of the Connecticut Constitution.

"E. The attempted service of said subpoenas is intended to harass the applicant.

"F. The disclosure sought is overbroad, unnecessarily burdensome, irrelevant, immaterial and not calculated to lead to the discovery of relevant or material information."

After the Supreme Court dismissed the first applications, the second applications were brought on three grounds identical to grounds A, D and F of the original application. The res judicata rules previously discussed bar such a relitigation of those three issues. For example, the method of the service of the subpoenas was argued in the first action and then exhaustively analyzed and ruled upon by the Supreme Court in the first appeal. The court specifically held that § 36-9*l* (b) "confers no standing upon bank customers to contest the procedures by which service of process has been made on their banks." *Morgan* v. *Brown,* supra, 212.

The plaintiffs are attempting not only to relitigate an issue previously presented to the trial court, but one that has been ruled upon by the Supreme Court. The remaining issues are barred from relitigation by the doctrine of merger.

Application of the doctrine of res judicata requires that there be a previous judgment on the merits. *Virgo* v. *Lyons,* 209 Conn. 497, 501, 551 A.2d 1243 (1988). "Judgments based on the following reasons are not rendered on the merits: want of jurisdiction; pre-maturity; failure to prosecute; unavailable or inappropriate relief or remedy; lack of standing." 2 E. Stephenson, Connecticut Civil Procedure (2d Ed.) § 354d. We conclude that the trial court's judgment in the first action and the decision of the Supreme Court constitute a judgment on the merits, and, therefore, the plaintiffs' second application is barred by the doctrine of res judicata.

The plaintiffs' claim that their second applications to quash are permitted because of accidental failure of suit is without merit. The plaintiffs rely upon General Statutes § 52-592 (a), which provides: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoid-

able accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; or if in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment of nonsuit has been rendered, or a judgment for the plaintiff is reversed, the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of judgment." This statute, by its plain language, is designed to prevent a miscarriage of justice if the plaintiffs fail to get a proper day in court due to the various enumerated procedural problems. It is not a device for avoiding our well-settled rules of res judicata. In the present case, there was a valid judgment on the merits, and therefore no recourse to § 52-592.

In light of our holding that the plaintiffs' present action was barred by res judicata, we need not reach the merits of the plaintiffs' claim that the second applications were timely filed under § 52-592 or any other theory. The trial court shall, without further delay, set a date for the production of the requested documents.

The judgment dismissing the applications to quash is affirmed.

In this opinion the other judges concurred.