## STANLEY V. TUCKER *v.* PACE INVESTMENTS ASSOCIATES ET AL.
## (11303)

DUPONT, C. J., FOTI and SCHALLER, Js.

Argued June 2—decision released August 10, 1993

*Stanley V. Tucker,* pro se, the appellant (plaintiff).

*I. Milton Widem,* for the appellees (named defendant et al.).

*Paul D. Buhl,* for the appellees (defendant Northeast Savings, F.A., et al.).

SCHALLER, J. The plaintiff, Stanley V. Tucker, appeals from the judgment dismissing his civil rights claim against the defendants and from the summary judgment rendered in favor of the defendants with respect to his claim of abuse of process. The disposi-

tive issue in this appeal is whether the doctrine of res judicata provides a basis on which we can affirm the trial court's judgment. Because res judicata operates to bar Tucker's civil rights claim and his abuse of process claim, we affirm the judgment of the trial court.

The following facts are not in dispute. The long and tortured history of this case began in 1978, when Northeast Savings, F.A. (then Hartford Federal Savings and Loan Association), brought a foreclosure action against Tucker. The foreclosure action involved four properties located in Hartford. The trial court granted Tucker's motion for an appointment of a rent receiver. After the court rendered judgments of foreclosure on the four properties, Tucker appealed to our Supreme Court. For reasons unrelated to the present appeal, the Supreme Court reversed the judgments of foreclosure in *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 181 Conn. 607, 436 A.2d 1259 (1980).

Northeast Savings, F.A., again sought foreclosure against Tucker alleging nonpayment of the mortgages. Tucker denied nonpayment, pleaded special defenses and brought a counterclaim for damages. Subsequently, the original rent receiver resigned, and, on October 26, 1981, Northeast applied to the court for a replacement. Tucker objected, asserting that Practice Book §§ 504 through 510 are unconstitutional and void. Tucker further sought the appointment of himself as the rent receiver. After a hearing, the trial court denied the defendant's motions and, on December 21, 1981, appointed Plaza Realty as rent receiver. When the trial court rendered final judgments of strict foreclosure on all four properties, Tucker appealed to the Supreme Court.

In *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985) (*Hartford*

*Federal II*), the Supreme Court affirmed the judgment of the trial court. In doing so, the court rejected Tucker's assertion that Practice Book §§ 504 through 510 are unconstitutional and void. Further, the court was not persuaded that the judgments of strict foreclosure were invalid.

Ultimately, the defendant in this case, Northeast Savings, F.A., transferred title in the properties to the defendants, Donna Galluzo and Lorraine Whitehouse. Galluzo and Whitehouse, in turn, mortgaged the properties to the named defendant, Pace Investments Association.[1] Tucker then filed an action in the United States District Court against Northeast Savings, F.A., Robert Basine, Galluzo and Whitehouse, claiming monetary and declaratory relief pursuant to 42 U.S.C. § 1983. *Tucker* v. *Northeast Savings,* 675 F. Sup. 763 (D. Conn. 1987), appeal dismissed, 849 F.2d 1468 (2d Cir. 1988), cert. denied, 488 U.S. 1007, 109 S. Ct. 788, 102 L. Ed. 2d 780 (1989). That action was predicated on the notion that Practice Book §§ 504 through 510 are unconstitutional both factually and as applied to the foreclosures at issue. Id. The District Court dismissed Tucker's action reasoning that "the Connecticut Supreme Court determined that the application of the state procedures to Tucker in the foreclosure proceedings did not deny him due process of law and that he was given notice and a meaningful opportunity to be heard in the appointment of the receiver." Id., 767.

On April 7, 1989, Tucker brought the present action against the defendants. In count one of his complaint, Tucker asserted a civil rights claim pursuant to 42 U.S.C. § 1983. The gravamen of Tucker's claim was that Practice Book §§ 504 through 510 are unconstitutional and void as applied to this case. In count two of

[1] In addition to the defendants mentioned in the text, Tucker brought the present action against Robert Basine, attorney for Northeast Savings, F.A.

the complaint, Tucker alleged an action sounding in fraud. On June 2, 1989, the defendants filed a motion to dismiss count one of the complaint for lack of subject matter jurisdiction. They claimed that the trial court was without jurisdiction to review a decision of an appellate court. The trial court granted the motion and an appeal to this court followed. In April, 1990, this court dismissed the appeal for lack of a final judgment. *Tucker* v. *Pace Investments Associates,* 21 Conn. App. 821, 576 A.2d 595 (1990).

On May 7, 1990, Tucker filed a substitute complaint through which he replaced his fraud claim in the original complaint with an action for abuse of process. Specifically, Tucker alleged that the defendants abused the use of rent receivers. The trial court struck the substitute complaint because the defendants could not be held liable for the conduct of the court appointed receiver.

Again Tucker attempted to initiate an action for abuse of process, and again the trial court struck the complaint. On January 10, 1991, Tucker filed yet another substitute complaint alleging abuse of process and seeking equitable relief. On February 19, 1991, the trial court struck Tucker's claim for equitable relief. With respect to the abuse of process claim, the defendants filed an answer and raised as special defenses the statute of limitations and the doctrine of res judicata.

On May 31, 1991, the defendants moved for summary judgment relying on the statute of limitations and res judicata. On January 3, 1992, the trial court agreed with the defendants that the abuse of process action was time barred and rendered summary judgment accordingly. In its memorandum of decision, the trial court concluded: "It is clear that pursuant to the plaintiff's pleadings, the conduct complained of ended in June, 1986 and, therefore, the plaintiff . . . would have had to assert his claim for abuse of process by

June of 1989. Since it was filed for the first time in May of 1990, it is time barred by the three year limitation period of General Statutes § 52-577." From the judgment dismissing his 42 U.S.C. § 1983 claim and from summary judgment on his abuse of process claim, Tucker brought the present appeal.

Before turning to Tucker's individual claims, it is necessary to understand fully the law of res judicata in Connecticut and its operation. " 'Res judicata or claim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . .' " *In re John B.,* 20 Conn. App. 725, 729, 570 A.2d 237 (1990), quoting *Virgo* v. *Lyons,* 209 Conn. 497, 501, 551 A.2d 1243 (1988). "The doctrine of res judicata provides that a former judgment serves as an absolute bar to a subsequent action involving any claims relating to such cause of action which were actually made or which might have been made. . . ." (Citations omitted; internal quotation marks omitted.) *Dunham* v. *Dunham,* 221 Conn. 384, 391–92, 604 A.2d 347 (1992).

The theory of "merger" and the "transactional test" steer the operation of res judicata. Id., 392 n.10; *Legassey* v. *Shulansky,* 28 Conn. App. 653, 656, 611 A.2d 930 (1992). Merger reflects the fact that " '[w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be "merged" in the judgment.' " *Legassey* v. *Shulansky,* supra, quoting 1 Restatement (Second), Judgments § 18 (1982).

An application of the transactional test defines the contours of the original claim. Once this claim is ascertained, a court can then assess the preclusive effects of the prior judgment. *Vakalis* v. *Kagan,* 18 Conn. App. 363, 367, 557 A.2d 1285 (1989). "In determining the nature of a cause of action for these purposes, we have

long looked to the group of facts which is claimed to have brought about an unlawful injury to the plaintiff . . . and have noted that [e]ven though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action. . . .'' (Citations omitted; internal quotation marks omitted.) *Dunham* v. *Dunham,* supra, 392–93 n.10. ''What factual grouping constitutes a transaction, and what groupings constitute a series are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . .'' (Internal quotation marks omitted.) Id., 392 n.10.

Further, courts must implement res judicata to foster the important public policy of preventing a party from relitigating a matter that he has already had an opportunity to litigate. *Duhaime* v. *American Reserve Life Ins. Co.,* 200 Conn. 360, 363–64, 511 A.2d 333 (1986). ''Res judicata, as a judicial doctrine . . . should be applied *as necessary* to promote its underlying purposes. These purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose . . . . *State* v. *Ellis,* 197 Conn. 436, 465–66, 497 A.2d 974 (1985).'' (Emphasis added; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Presnick,* 216 Conn. 135, 139, 577 A.2d 1058 (1990). Against this legal backdrop, we turn to Tucker's claims against the defendants.

I

## The Plaintiff's Civil Rights Claim

After a careful reading of our Supreme Court's decision in *Hartford Federal II,* supra, we are satisfied that

the doctrine of res judicata bars the plaintiff's civil rights claim against the defendants. In *Hartford Federal II,* Tucker argued that the process by which the court appointed the rent receivers denied him due process of the law. The court disagreed, holding that "[Tucker's] claim, that the grant of the plaintiff's applications for the appointment of rent receivers denied him due process of law, is clearly untenable." Id., 175–76. The court noted that Practice Book §§ 504. through 510 contained ample procedural safeguards to ensure that a party in interest has a meaningful time for a court hearing and an opportunity to litigate the question of the appointment of rent receivers. Id., 176. The court further held that "[i]t is clear from the record and from [Tucker's] own admission that he was given notice and a meaningful opportunity to be heard if he had objection to the appointment of a rent receiver." Id., 177.

Tucker also argued that the rent receiver procedures are unconstitutional because they do not provide a mechanism for the discharge of a rent receiver who is negligent or committing waste. The court again disagreed for the most part in light of the fact that the receiver must act within the supervision of the appointing judicial authority. Id., 178. The court also noted that it was within the trial court's discretion to find that the rent receiver appointed was better qualified to serve in that capacity than Tucker himself. Id., 179.

Through the present civil rights claim, brought eight years after the decision in *Hartford Federal II,* Tucker has done no more than echo his assertion that the appointment of rent receivers violated his due process rights. In his complaint, Tucker claims "that Connecticut Practice Book §§ 504 through 510 are unconstitutional and void as applied by the defendants herein for failure to give notice of defenses before a rent receiver-

ship begins to seize the plaintiff's rents." The present civil rights action sounds remarkably similar to Tucker's assertion in *Hartford Federal II*.

Tucker's pending challenge to the rent receiver provisions arose out of the same transaction or series of connected transactions as did his original constitutional challenge in *Hartford Federal II*, namely the appointment of rent receivers. The facts at issue in the present case are related in time, space, origin, and motivation. Further, Tucker's pending civil rights action involves claims relating to his original claims in *Hartford Federal II* and any additional matters most certainly could have been raised at that time. We conclude that our Supreme Court's disposition of Tucker's due process claims in *Hartford Federal II* serves as an absolute bar to the subsequent action at issue.[2]

We recognize the sua sponte nature of our invocation of res judicata. We are equally cognizant of the general rule that res judicata must be specially pleaded. *Zizka* v. *Water Pollution Control Authority,* 195 Conn. 682, 687, 490 A.2d 509 (1985); *Statewide Grievance Committee* v. *Presnick,* supra, 137 n.3. This general rule, however, yields when, as here, the circumstances reveal that a remand "would simply set judicial wheels unnecessarily spinning, only to remain at the same end of the road." *Chomko* v. *Patmon,* 20 Conn. App. 159, 163, 565 A.2d 250 (1989); cf. *Carnese* v. *Middleton,* 27 Conn. App. 530, 537, 608 A.2d 700 (1992) ("the strict

---

[2] In his reply brief, Tucker argues that by analogy to the recent United States Supreme Court's decision in *Connecticut* v. *Doehr,* 501 U.S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991), due process requires a hearing under Practice Book §§ 504 through 510. This argument is specious, however, because our Supreme Court held in *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 491 A.2d 1084 (1984), that Tucker was given notice and a meaningful opportunity to be heard if he had an objection to the appointment of a rent receiver. In fact, a hearing was held in connection with the appointment of Plaza Realty as rent receiver.

application of our rules of practice has yielded to a more common sense application when confronted with the implication of the doctrine of collateral estoppel'').

In this case, the preclusive effects of res judicata are so patently applicable that a remand to the trial court would only lead to the same result we reach here. Moreover, the trial court's dismissal of the civil rights count on October 4, 1989, occurred prior to the defendants' initiation of their pleadings. Because the court dismissed the count, there was no opportunity to answer or plead a special defense. We, therefore, invoke the doctrine of res judicata sua sponte to effectuate the public policy that justifies the doctrine's operation—to promote judicial economy and to avoid inconsistent judgments.

## II

### THE PLAINTIFF'S ABUSE OF PROCESS CLAIM

Tucker next challenges the trial court's granting of summary judgment with respect to his abuse of process claim. In this claim, Tucker alleged that the defendants abused the rent receiver process to augment his outstanding debt and thereby obtain judgments of strict foreclosure. In response, the defendants raised res judicata and the statute of limitations as special defenses and as bases for summary judgment. In granting summary judgment in the defendants' favor, the trial court found that the statute of limitations barred Tucker's abuse of process claim. While we agree with the trial court's ultimate judgment, we are more concerned with the preclusive effects of res judicata and affirm the trial court's judgment on this basis.[3] See *Henderson* v. *Department of Motor Vehicles*, 202 Conn.

---

[3] Because we resolve this issue on the basis of res judicata, it is unnecessary to reach the issue regarding the propriety of the court's reliance on the statute of limitations.

453, 461, 521 A.2d 1040 (1987) ("this court is authorized to rely upon alternative grounds supported by the record to sustain a judgment").

Our analysis regarding the preclusive effect of *Hartford Federal II* on the plaintiff's civil rights claim (part I, supra) leads to the same conclusion with respect to the abuse of process claim. It is true that Tucker did not raise specifically abuse of process as a counterclaim in the foreclosure action. Nevertheless, Tucker is seeking damages arising from allegations directed to the same transaction or series of connected transactions involved in *Hartford Federal II,* i.e., the appointment of rent receivers.

In *Hartford Federal II,* supra, 179, our Supreme Court emphasized the following with respect to the appointment of the rent receivers. "[Tucker] was afforded every opportunity in the trial court to pursue his complaints concerning the receivers of the rents. On at least two occasions, [Tucker] was advised that he could not, in his counterclaims, attack the plaintiff on the basis of any alleged misconduct on the part of the court-appointed receiver. The proper course, he was instructed by the court, was either to petition the court for removal of the rent receiver or to request the court's permission to sue the rent receiver. [Tucker] elected to object to the appointment of a new receiver of rents. The application for the appointment of a new receiver of rents was addressed to the sound legal discretion of the court, to be exercised with due regard to the rules, and such exercise is not to be disturbed lightly unless abuse of a discretion or other material error occurs. 2 Swift, Digest, p. 160. [Tucker] alleged that he was better qualified to collect the rents. The plaintiff denied this was true. It was thus [a] . . . question of fact. The trial court found adversely to [Tucker] in this regard and refused to appoint him as receiver of rents. As we read the evidence available to us, we

cannot say that this conclusion did not have a reasonable basis in fact. That being so, it was not an unreasonable or arbitrary exercise of discretion which led the trial court to appoint Plaza Realty as rent receiver."

We have noted that res judicata bars the relitigation of matters "involving any claims relating to such cause of action which were actually made *or which might have been made. . . .*" (Emphasis added; internal quotation marks omitted.) *Dunham* v. *Dunham,* supra, 391–92. It is abundantly clear from the foregoing passage of *Hartford Federal II* that the facts underlying the appointment of the rent receivers are related to the facts underlying the abuse of process claim in time, space, origin, or motivation, and that the abuse of process count could have been made in that case. The Supreme Court held that the trial court did not abuse its discretion in overruling Tucker's objection to the rent receiver appointment. Tucker cannot now relitigate his objection eight years later in the guise of an abuse of process claim.

"The purpose of a law suit is not only to do substantial justice but to bring an end to controversy. . . ." (Citation omitted; internal quotation marks omitted.) *Orselet* v. *DeMatteo,* 206 Conn. 542, 550, 539 A.2d 95 (1988). The decision in *Hartford Federal II* marked the end of the rent receiver controversy and the end of all matters related to it. Any additional litigation directed at this matter would unnecessarily burden our courts and threaten the integrity of our judicial system by creating the risk of inconsistent judgments. For these reasons, we conclude that the doctrine of res judicata bars Tucker's civil rights claim and his abuse of process claim.

The judgment is affirmed.

In this opinion the other judges concurred.