[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE:MOTION FOR SUMMARY JUDGMENT
The plaintiff, City of Milford, has filed a foreclosure action against the defendants, Anthony and Gloria Andresakis, for unpaid property taxes and a flood and erosion assessment lien CT Page 4869 allegedly owed on real estate in Milford, Connecticut, of which the Andresakises are record owners. On July 31, 1996, the Andresakises filed an amended answer, asserting special defenses, and a single count counterclaim. The counterclaim asserts that the foreclosure action was commenced due to amounts owed by the Andresakises pursuant to a flood and erosion project, which was to benefit them, and because the project decreased the value of their property, rather than provided a benefit to it, they are entitled to relief based on that decrease in value.
On September 13, 1996, the City filed a reply to the Andresakises' special defenses and asserted its own special defenses to the counterclaim on the grounds that (1) the counterclaim is barred by General Statutes § 7-142, and (2) the Andresakis have failed to exhaust their administrative remedies, thus depriving the court of subject matter jurisdiction. On October 3, 1996, the City filed a request for leave to amend its special defenses to include the special defenses of res judicata and collateral estoppel as a result of a decision by the United States District Court for the District of Connecticut. On October 17, 1996, the City filed another request for leave to amend its answer to include the special defenses of res judicata and collateral estoppel based on a stipulation of dismissal and release of claims executed by the Andresakises in federal court. Both of the requests were granted.
On December 17, 1996, the Andresakises filed a request for leave to amend their counterclaim to include two additional counts. The request was granted by the court. The second count of the counterclaim alleges negligent misrepresentation against the City of Milford involving the stipulation of dismissal of an action previously commenced by the Andresakises in federal district court. In that federal action, on February 17, 1995, the City and the Andresakises entered into a stipulation of dismissal of the Andresakises' claims in the United States District Court for the District of Connecticut for the sum of $7,700.00.[1]
The Andresakises also signed a general release, in which they released the City "from all damages and claims, including but not limited to any claims arising out of and/or related to" the federal action "in connection with . . : the construction and maintenance of a flood, shore and erosion control revetment and seawall known as the Burwell/Fairview Beach Flood Control project." The Andresakises allege that the stipulation of dismissal was based on material representations by the City that the amount of interest owed on delinquency in payment of property CT Page 4870 taxes and on the special assessment for the flood and erosion control project did not exceed $7,700.00. The Andresakises further allege that this representation was inaccurate, and that if they had known the actual amount of the interest owed they would not have settled for $7,700.00. In the third count of the counterclaim, the Andresakises alleged that the City is barred from collecting on the flood and erosion control assessment based on promissory estoppel.
On August 11, 1997, pursuant to order of the court, Curran, J., granting the City's request to revise the counterclaim as to the third count, the Andresakises deleted the third count of their counterclaim.
On January 2, 1998, the City filed an answer to the second count of the Andresakises' counterclaim, and asserted the special defenses of res judicata and collateral estoppel. The special defenses were based on a ruling of the federal district court to deny the Andresakises' motions to compel the City of Milford to fulfill the terms of the stipulation of dismissal and to restore certain of their constitutional claims to the federal docket, and the Second Circuit's affirmance of that ruling. The City also filed on that date a motion for summary judgment, and accompanying memorandum, arguing that it is entitled to judgment as a matter of law on the Andresakises' three-count counterclaim. The Andresakises filed an opposition to the City's motion for summary judgment on January 20, 1998.
"[A]ny party may move for summary judgment upon any counterclaim or cross complaint as if it were an independent action." Practice Book § 379. "Practice book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) Thompson Peck, Inc. v. Division Drywall, Inc., 241 Conn. 370, 374,696 A.2d 326 (1997). "Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue. . . . [S]ee Practice Book §§ 380 and 381." (Internal quotation marks omitted.) Beers v. Bayliner Marine Corp.,
CT Page 4871236 Conn. 769, 771 n. 4, 675 A.2d 829 (1996). "To oppose a motion for summary judgment successfully the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.)Connecticut National Bank v. Great Neck Development Co.,215 Conn. 143, 148, 574 A.2d 1298 (1990).
The City argues that it is entitled to judgment as a matter of law on the first count of the counterclaim because (1) as a challenge to the flood and erosion control assessment, the first count is not timely and is improper because the Andresakises should have followed procedures under General Statutes §7-142 for a person aggrieved by an assessment, and (2) the first count is barred because the Andresakises released any claims against the City relating to the flood and erosion control project pursuant to the general release. In response, the Andresakises argue that the first count of their counterclaim does not challenge the flood and erosion control assessment but, rather, asserts that their property value decreased as a result of the manner in which the flood and erosion project was constructed. Therefore, they argue, the statutory administrative appeal procedure affords no remedy and does not apply to their claim. In response to the City's second ground for summary judgment, the Andresakises argue that (1) the general release is not properly part of the court's record and (2) since the second count of the counterclaim attacks the enforceability of the release, the City cannot rely on it to bar the claim in the first count.
Title 25, chapter 477 of the General Statutes addresses flood control and beach erosion. General Statutes § 25-88 provides: "Method of assessment. Whenever any assessment is made as herein provided, the amount to be raised thereby shall be apportioned among the properties benefitted [benefited]. . . . No benefits shall be assessed against any property in excess of the special benefit to accrue to such property. Assessments under this part shall bemade subject to the provisions of sections 7-139 to 7-145,
inclusive." (Emphasis added.) General Statutes § 25-88. General Statutes § 7 142 provides, in pertinent part: "Appeal from municipal assessments. Any person aggrieved by the appraisal of damages in laying out any highway or in making any improvement or public work in any city or borough, or by the assessment of benefits therefor . . . may . . . appeal from such appraisal, assessment or order, to any judge of the Superior Court within thirty days after due notice is given of such appraisal, CT Page 4872 assessment or order, which appeal shall be a written petition for reappraisal, reassessment or review of such order . . . . Such judge may, by committee or otherwise, reassess such damages or benefits, or review and revoke, modify or affirm such order, and, if such damages are increased or such assessments of benefits reduced or such order revoked, may award costs against the city or borough, otherwise against the appellant. . . ." General Statutes § 7-142.
"In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature. . . . It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation. . . . [W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislatures intent. . . . A statute does not become ambiguous because the parties argue its meaning differently. . . . The legislative intent is to be found, not in what the legislature intended to say, but in the meaning of what it did say. . . . We must construe a statute without reference to whether we feel that it might be improved by adding to it or interpreting it differently." (Citations omitted; internal quotation marks omitted.) State v. Gordon, 45 Conn. App. 490, 497-98,696 A.2d 1034, cert. granted, 243 Conn. 911, 701 A.2d 336 (1997).
The plain language of § 7-142 indicates that any person aggrieved by the appraisal of damages, or assessment of benefits, in any improvement or public work may appeal from such appraisal or assessment to the Superior Court within thirty days after notice is given of the appraisal or assessment. The Andresakises' argument that General Statutes § 7-142 does not apply to their counterclaim because the first count does not collaterally attack the City's initial assessment overlooks the fact that the statute also applies to appeals by persons aggrieved in the appraisal of damages. The Andresakises' core argument is that their property decreased in value as a result of the flood and erosion control project, and instead of appraising the property for damage, the City assessed them for a benefit to the property. This type of aggrievement is clearly contemplated by the language of § 7-142. Cf. Bishop v. Meriden, 115 Conn. 624, 626,162 A. 846 (1932) (noting that, on appeal of assessment of benefits and damages, trial court "should have determined the amount of special benefits accruing to each of the property owners affected by the improvement and, upon the basis of the benefits so CT Page 4873 determined, should have apportioned among them the amounts by which the damages . . . were increased by the court").
Under § 7-142, appeal from an appraisal of damages or assessment of benefits must be made within thirty days after notice is given of such appraisal or assessment. In support of its motion for summary judgment, the City of Milford attached exhibits indicating that notice of a public hearing by the Flood and Erosion Control Board concerning benefit assessments was sent to the Andresakises on January 23, 1987. According to the minutes of this public hearing, the Andresakises did not appear to address the board. Additionally, the Andresakises did not seek appeal of the benefit assessment, nor appeal of the failure of the board to appraise the property for damage. "It has been repeatedly held that a taxpayer wishing to contest the legality of its tax assessments must follow prescribed statutory procedures . . . . A taxpayer who has not sought redress in an appropriate manner is foreclosed from continuing litigation outside these statutes.'" City of Milford v. Andresakis, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 047124 (November 26, 1997, Curran, J.), quoting Farmington v.Dowling, 26 Conn. App. 545, 549 50, 602 A.2d 1047, cert. granted,221 Conn. 921, 608 A.2d 686 (1992), cert. dismissed,224 Conn. 592, 619 A.2d 852 (1993); see Hartford v. Faith Center. Inc.,196 Conn. 487, 493 A.2d 883 (1985). "It is the general rule, with reference to special assessments of benefits, that an assessment legally made cannot be attacked in a collateral proceeding but requires pursuit of the statutory remedy for review, unless the assessment is void. . . . If the commission assesses benefits where a property is not benefitted [benefited], it commits an error but does not act beyond its jurisdiction." (Citations omitted.)Vaill v. Sewer Commission, 168 Conn. 514, 518-19,362 A.2d 885 (1975). Indeed, this court, Curran, J., has previously noted that "[t]he [Andresakises] have not adequately pursued their statutory remedies to challenge the assessment."City of Milford v. Andresakis, supra, Superior Court, Docket No. 047124. Since the Andresakises were required to, but did not, seek administrative remedies on their claimed aggrievement, the City is entitled to judgment as a matter of law. The City's motion for summary judgment as to count one of the counterclaim is hereby granted.
The City also argues that it is entitled to summary judgment on the first count of the counterclaim because the general release signed by the Andresakises in federal court precludes the Andresakises from bringing any claim regarding the flood and CT Page 4874 erosion control project.
The Andresakises assert two arguments in opposition to the City's motion on this basis. First, the Andresakises argue that the release "is not properly part of this court's record. The [City] merely submits the General Release as an exhibit without any proper moving papers." The Andresakises cite no authority in support of this argument, and research of Connecticut law reveals none.
The City attached a copy of the release as an exhibit to its motion for summary judgment. This complies with Practice Book § 380, which requires a motion for summary judgment to "be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like." SeeHeyman Associates No. 1 v. Insurance Co. of Pennsylvania,231 Conn. 756, 796, 653 A.2d 122 (1995) (the party moving for summary judgment "is required to support its motion with supporting documentation"); Ervin v. Hosanna Ministry. Inc., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 048157 (November 8, 1995, Skolnick, J.) (defendants filed motion for summary judgment on basis that plaintiff waived right to bring claim due to execution of general release; "[a] copy of the purported release was filed as supporting documentation by the defendants). The Andresakises opposition on this basis is without merit.
In the alternative, the Andresakises argue that since the second count of the counterclaim attacks the enforceability of the release, the City cannot rely on it to bar the claim in the first count. "The general principle that fraud vitiates every transaction and all contracts applies to releases. "66 Am.Jur.2d 695-96, Release § 21 (1973). "It has been held in several jurisdictions that the question whether a release which may be avoided for fraud is void or merely voidable depends upon whether the fraud relates to the factum or the inducement. If there is fraud in the factum, wherein the releasor signs an instrument which is in truth a release, whereas he was induced to believe that he was signing an entirely different type of instrument . . . , the instrument is void. Where there is fraud only in the consideration, as where the release is obtained from an injured person by misrepresentations as to the nature of his injuries, or by other fraudulent representations as to matters other than the character of the instrument, the release is CT Page 4875 voidable only, and until set aside in equity is binding on the releasor." (Footnotes omitted. ) Id. § 14, pp. 689-90; seeKavarco v. T.J.E. Inc., 2 Conn. App. 294, 298, 478 A.2d 257
(1984) (where there has been fraud in the inducement, the contract is voidable). "If a compromise and release is voidable, the releasor may as a general rule evidence his election to avoid it by bringing an action at law upon the claim forming the subject matter of the settlement on the theory that he has rescinded it. In such cases the plaintiff is permitted to show the invalidity of the settlement where it is asserted as a defense. In some instances, however, . . . a direct proceeding to set aside the settlement must be brought in equity before the suit at law can be maintained on the original claim." (Footnotes omitted.) 66 Am.Jur.2d 732, Release § 54 (1973). "A release cannot be avoided for alleged fraud in collateral proceedings instituted in a court of law, where it was given in settlement of a suit and was sanctioned by the court's order to enter the case agreed and settled." Id. § 56, p. 735; cf. Ervin v. HosannaMinistry, Inc., supra, Superior Court, Docket No. 048157 (denying defendants' motion for summary judgment based on release because genuine issue of material fact existed as to whether defendant made fraudulent misrepresentations to induce plaintiff to sign release).
The second count of the Andresakises' counterclaim does not specifically seek rescission of the release or a reversal of the stipulation of dismissal; the first count, however, impliedly challenges the enforceability of the release by seeking a claim on a matter covered under the release. In any event, the Andresakises may not collaterally challenge the release by simply asserting a claim covered under it without first directly seeking to avoid it for negligent misrepresentation, because the release was executed concomitantly with the federal court's dismissal. As the allegations of negligent misrepresentation relate to settlement negotiations between the City of Milford and the Andresakises conducted pursuant to a federal action, and because the stipulation of dismissal was executed in federal court, an action to avoid the release and stipulation of dismissal should most appropriately be pursued before the same federal tribunal. The court grants summary judgment in favor of the City on the first count of the counterclaim.
The City also argues that it is entitled to summary judgment on the second count of the counterclaim on the grounds of collateral estoppel and res judicata, asserting that the federal CT Page 4876 courts have already considered the Andresakises' claim of misrepresentation and rejected it. See Andresakis v. City ofMilford, Recommended Ruling on Pending Motions, Docket No. 93CV00098 (March 22, 1996, Martinez, U.S.M.J.) (approved and adopted by U.S. District Court, September 26, 1996, Chatigny, U.S.D.J.), aff'd, Summary Order, Docket No. 96-9467 (2d Cir. July 9, 1997, Miner, J., McLaughlin, J., Nickerson, J.). In response, the Andresakises argue that the federal courts did not address the issue of whether the City made material misrepresentations in the settlement stipulation; rather, the courts merely addressed whether the Andresakises understood that such settlement would not terminate the City's foreclosure action presently before this court. Since they discovered the City's alleged misrepresentation after termination of the federal court litigation, the Andresakises argue that the claim could not have been raised in the federal court litigation.
"Because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment [is] the appropriate method for resolving a claim of res judicata." Jackson v. R.G. Whipple, Inc.,225 Conn. 705, 712, 627 A.2d 374 (1993), quoting Zizka v. Water PollutionControl Authority, 195 Conn. 682, 687, 490 A.2d 509 (1985)." Cityof Milford v. Andresakis, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 047124 (October 31, 1995, Curran, J.). "Collateral estoppel, like res judicata, must be pleaded as a special defense." Id., citing Carnese v. Middleton,27 Conn. App. 530, 535, 608 A.2d 700 (1992); see Practice Book § 164. "Generally, res judicata must be specially pleaded; Tucker v. Pace Investment Associates, 32 Conn. App. 384, 391,629 A.2d 470 [, cert. denied, 228 Conn. 906, 634 A.2d 299 (1993), cert. denied, 114 S.Ct. 1305 (1994)]; and then it can be raised properly by a motion for summary judgment. Jackson v. R.G. Whipple, Inc., supra, 225 Conn. 712. Likewise, [c]ollateral estoppel must be specially pleaded before it may be raised as a basis for a summary judgment motion." (Internal quotation marks omitted.) City of Milford v. Andresakis, supra, Superior Court, Docket No. 047124. The City of Milford has specially pleaded that the Andresakises' claims in the second count of their counterclaim are barred by the doctrines of res judicata and collateral estoppel.
"Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the CT Page 4877 merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit. . . .
The two doctrines protect the finality of judicial determinations, conserve the time of the court and prevent wasteful relitigation. . . . Res judicata, or claim preclusion, is distinguishable from collateral estoppel, or issue preclusion. Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim." (Citations omitted; internal quotation marks omitted.) Mazziotti v. Allstate Insurance Co.,240 Conn. 799, 812, 695 A.2d 1010 (1997). "A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Citations omitted; internal quotation marks omitted.)Connecticut Natural Gas Corp. v. Miller, 239 Conn. 313, 322,684 A.2d 1173 (1996). "[A] decision whether to apply the doctrine of res judicata to claims that have not actually been litigated should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the [defendants] in the vindication of a just claim. . . . Put otherwise, the principle of res judicata is based on the public policy that a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Id., 322-23.
"In contrast, collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . Furthermore, [t]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. . . ." (Citations omitted; internal quotation marks omitted.) Mazziotti v. Allstate Insurance Co., supra,240 Conn. 812. Moreover, "[i]n order for collateral estoppel to apply . . . there must be an identity of issues, that is, the prior litigation must have resolved the same legal or factual issue that is present in the second litigation." (Internal CT Page 4878 quotation marks omitted.) Connecticut National Bank v. Rytman,241 Conn. 24, 38, 694 A.2d 1246 (1997). "Both issue and claim preclusion express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." (Internal quotation marks omitted.)Mazziotti v. Allstate Insurance Co., supra, 812.
In her "Recommended Ruling on Pending Motions," United States Magistrate Judge Martinez addressed the Andresakises' motions to compel the City of Milford to fulfill the terms of the stipulation of dismissal and to restore certain of the Andresakises' constitutional claims to the federal docket. SeeAndresakis v. City of Milford, Recommended Ruling on Pending Motions, Docket No. 93CV00098, pp. 1, 9 (March 22, 1996, Martinez, U.S.M.J.). In the motion to restore the constitutional claims, the Andresakises argued that they were entitled to litigate their constitutional claims, which were extinguished by the stipulation of dismissal and general release, because, interalia, "the [Andresakises] thought the settlement agreement required the City to dismiss the foreclosure action." Id., p. 9. The court characterized this argument as an attack on the stipulation of dismissal under Rule 60(b)(1) of the Federal Rules of Civil Procedure, which pertains to relief from judgments. See id. According to the court, Rule 60(b)(1) "provides that the court may, upon such terms as are just, relieve a party from a final judgment for, inter alia,mistake, inadvertence, surprise, inexcusable neglect, newly discovered evidence or fraud." Id., p. 10. The court analyzed the Andresakises' claim under Rule 60(b)(1) and held that the stipulation of dismissal should not be vacated because any "mistake" involved was not mutual and did not "result from an erroneous impression of fact or an unexpected and unfavorable occurrence [making] the mistake a matter . . . of unavoidability." Id., pp. 10-11. Further, the court held generally that the testimony of Mr. Andresakis "[satisfied] the court that the Andresakises did not harbor a mistaken belief as to the consequences that the dismissal . . . would have on the state foreclosure action"; id., p. 11; and "understood the effect of settlement." Id., p. 11 n. 9.
Magistrate Judge Martinez's recommended ruling was approved and adopted by the federal District Court for the District of Connecticut, Chatigny, J., on September 26, 1996. The Andresakises appealed the ruling to the United States Court of Appeals for the Second Circuit. The court of appeals affirmed the CT Page 4879 ruling, finding that it was not error for the district court to characterize the motion to restore the constitutional claims to the docket as a Rule 60(b) motion to vacate, and that pursuant to Rule 60(b) the district court did not abuse its discretion in denying the Andresakises' motion. See Andresakis v. City ofMilford, Summary Order, Docket No. 96-9467, pp. 4-5 (2d Cir. July 9, 1997, Miner, J., McLaughlin, J., Nickerson, J.).
It is evident that, contrary to the City's position, the federal courts did not consider the Andresakises' claim of misrepresentation in its prior rulings. Rather, the courts addressed whether the stipulation of dismissal should be vacated, pursuant to the Andresakises' motion, by operation of Rule 60(b) because the Andresakises were justifiably mistaken in their belief that the settlement would not terminate the City's foreclosure action presently before this court. This does not implicate either a claim that has already been decided on the merits (res judicata) or the relitigation of an issue that has been determined in a prior suit (collateral estoppel). Therefore, the doctrines of res judicata and collateral estoppel do not bar the second count of Andresakises' counterclaim, and the City's motion for summary judgment on this basis is denied.
The plaintiff City's motion for summary judgment on the first count of the Andresakises' counterclaim is granted on the basis that (1) the counterclaim is untimely and improper because the Andresakises failed to properly challenge the assessment pursuant to General Statutes § 7-142, and (2) the claim is barred because the Andresakises waived any such claim pursuant to a general release signed in connection with their action in federal district court. The City's motion for summary judgment on the second count of the counterclaim, on the basis of res judicata and collateral estoppel, is denied because the claim in that count was not decided on the merits in the prior federal action nor does it involve relitigation of an issue that has already been determined in a prior suit.
The Court
By Curran, J.T.R.