# LIGHTHOUSE LANDINGS, INC. *v.* CONNECTICUT LIGHT AND POWER COMPANY
## (SC 17976)

Norcott, Katz, Palmer, Zarella and Schaller, Js.*

---

\* This case was argued prior to the implementation of the policy of this court to hear all cases en banc.

Argued November 21, 2008—officially released January 5, 2011**

---

** January 5, 2011, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Giovanna Tiberii Weller*, with whom were *John R. Horvack, Jr.*, and, on the brief, *Lauren J. Taylor*, for the appellant (defendant).

*Scott M. Harrington* for the appellee (plaintiff).

*Opinion*

PER CURIAM. In this action involving the termination of a commercial lease agreement between the defendant, Connecticut Light and Power Company (power company), and the plaintiff, Lighthouse Landings, Inc. (Lighthouse), the power company appeals[1] from the judgment of the trial court, which denied in part the power company's motion for summary judgment. The power company contends that (1) the trial court improperly construed this court's remand order in *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, 279 Conn. 90, 900 A.2d 1242 (2006) (*Lighthouse Landings*), (2) Lighthouse's three remaining claims alleging intentional misrepresentation, negligent misrepresentation and violation of the Connecticut Unfair Trade Practices Act (CUTPA)[2] are barred by the doc-

---

[1] The defendant appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 42-110a et seq.

trine of collateral estoppel because the issues underlying those claims were fully and fairly litigated and finally decided against Lighthouse in *Lighthouse Landings*,[3] and (3) our reasoning in *Lighthouse Landings* precludes Lighthouse from proving the essential elements of its damages claims. In the alternative, the power company contends that the trial court's decision in the declaratory judgment action precludes consideration of the misrepresentation and CUTPA claims in the present action under the doctrine of res judicata. Lighthouse responds that (1) the trial court properly construed the remand order in *Lighthouse Landings*, (2) the misrepresentation and CUTPA claims are not estopped because they are predicated on conduct by the power company that occurred *after* Lighthouse exercised its lease extension option, and (3) our reasoning in *Lighthouse Landings* does not preclude Lighthouse from proving the essential elements of its damages claims. Lighthouse further argues that the doctrine of res judicata does not apply because the misrepresentation and CUTPA claims were not fully litigated and decided by the trial court in the declaratory judgment action. We conclude that the trial court properly construed this court's remand order in *Lighthouse Landings* and that our decision in that case has no preclusive effect on Lighthouse's misrepresentation and CUTPA claims. We also conclude, however, that the trial court's decision in the declaratory judgment action bars further litigation of those claims. Accordingly, we reverse the judgment of the trial court on the summary judgment motion

---

[3] Ordinarily, the denial of a motion for summary judgment is not an appealable final judgment. E.g., *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 653, 954 A.2d 816 (2008). When the decision on a motion for summary judgment, however, is based on the doctrine of collateral estoppel, the denial of that motion does constitute a final judgment for purposes of appeal. See, e.g., *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 194–95, 544 A.2d 604 (1988). "That precept applies to the doctrine of res judicata with equal force." *Singhaviroj* v. *Board of Education*, 124 Conn. App. 228, 232, 4 A.3d 851 (2010).

with respect to the misrepresentation and CUTPA claims.

## I

The following facts and procedural history, much of which are set forth in our opinion in *Lighthouse Landings*, are relevant to our resolution of this appeal. "On November 30, 1999, the power company leased a parcel of land in the city of Stamford to Lighthouse for the purpose of operating a high speed ferry service between Stamford and New York City. The leased parcel consisted of 3.6 acres within a larger twenty-five acre tract, also owned by the power company. Article five of the lease provided: 'The [p]remises will be used as a ferry service terminal including, without limitation, a parking lot, ticket office, terminal and dock for [t]enant's vessels.' Article six of the lease provided in relevant part: '[The] [t]enant shall diligently proceed to obtain all governmental permits, approvals, licenses and/or certificates required in connection with [t]enant's use of the [p]remises . . . .

" 'If [t]enant has not obtained all such [p]ermits within one hundred eighty (180) days after the date of this [l]ease, then [t]enant shall have the right to either (i) terminate this [l]ease or (ii) extend the contingency period for another sixty (60) days . . . . [I]f [t]enant exercises its right to extend the contingency period for an additional sixty (60) days, and if [t]enant has not obtained all such [p]ermits within the additional sixty (60) days, then [l]andlord and [t]enant shall each have the right to terminate the lease by notice given to the other party within ten (10) days after the expiration of said sixty (60) day period. In the event that either party elects to terminate this [l]ease in accordance with this [article] . . . the [l]ease shall terminate as of the date of such notice of termination and thereafter neither party shall have any obligations or liability hereunder,

except those which arose prior to the termination date. Landlord agrees to cooperate with [t]enant in connection with the [p]ermits; [t]enant agrees to reimburse [l]andlord for its out of pocket costs incurred at [t]enant's request in connection with obtaining the [p]ermits.' . . .

"The 180 day period for obtaining permits described in article six began to run on November 30, 1999, and expired on May 29, 2000. When Lighthouse failed to obtain the required permits within the stipulated time, it exercised its option to extend the lease for an additional sixty days, until July 28, 2000. Lighthouse subsequently failed to obtain the permits by the end of the extended period. Accordingly, the power company sent notice terminating the lease to Lighthouse by letter dated August 3, 2000, and the lease thereby was terminated on August 4, 2000, the date Lighthouse received actual notice of the termination.

"Shortly thereafter, Lighthouse commenced a civil action against the power company, alleging improper termination of the lease. In its . . . complaint,[4] Lighthouse alleged, inter alia, that the power company improperly had (1) induced Lighthouse to request the sixty day extension,[5] thereby granting the power com-

---

[4] The original complaint, dated August 7, 2000, was amended by Lighthouse on July 8, 2003, to add CT Fast Ferry Services, Inc., a subsidiary and assignee of the subject lease, as a party plaintiff and to supplement the factual allegations in the complaint. Thereafter, a revised complaint was filed on May 21, 2004, making minor modifications to the amended complaint. All further references to the complaint are to the revised complaint.

[5] Paragraph eleven of the complaint alleged that, "[d]uring May of 2000, Lighthouse discussed with [the power company] its efforts to obtain governmental approvals to operate a fast ferry service at the [l]eased [p]remises and advised [the power company] that the approvals would take some time." Paragraph twelve alleged that, "[d]uring those discussions, [the power company] represented that it looked forward to a long-term relationship with Lighthouse, encouraged Lighthouse to move forward to seek its governmental approvals, and encouraged Lighthouse to extend the contingency period to obtain governmental permits an additional sixty days, and Lighthouse extended the contingency period in light of those representations." Neither allegation was included in the original complaint.

pany the right to terminate the lease at the end of the extended period if Lighthouse did not obtain all applicable governmental permits within the specified time, even though Lighthouse was not legally obligated to terminate or to extend the lease after the first 180 days, and (2) exercised its right to terminate the lease when Lighthouse failed to obtain the required permits, despite prior assurances, on which Lighthouse had relied in exercising its right to extend the lease, that it did not intend to do so." *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, supra, 279 Conn. 93–95.

The complaint also alleged that the power company engaged in improper conduct *after* Lighthouse had requested the sixty day extension. Paragraph fourteen specifically alleged that, after Lighthouse exercised its option to extend the lease, it sought assurances from the power company that it would not terminate the lease at the end of the sixty day period because of Lighthouse's inability to secure the permits within that time.[6] Paragraph fifteen further alleged that Lighthouse had received a letter from the power company dated July 17, 2000, confirming its receipt of Lighthouse's July 10, 2000 letter and stating that it would not use the

---

[6] In a letter to the power company dated July 10, 2000, Anthony T. Colasanti, vice president of Lighthouse, wrote: "Article [six] of the . . . [l]ease provides that [Lighthouse] has 180 days, plus a [sixty] day extension period, to obtain all permits and approvals needed to conduct a commuter ferry operation from the leased premises.

"As you are aware from my prior correspondence, Lighthouse has encountered delays in completing the approval process. Despite these delays, Lighthouse is confident that all permits and approvals needed to utilize the leased premises for a ferry site will be forthcoming and Lighthouse, therefore, deems the 'permits' issue to be satisfied. *All provisions of [a]rticle [six] of the [l]ease as pertains to termination are, therefore, void and of no force and effect.*

"Lighthouse requests that [you] acknowledge receipt of the within correspondence and confirm that the [l]ease remains in force and effect." (Emphasis added.)

permit issue to attempt to terminate the lease.[7] Paragraph sixteen alleged that, on or about July 19, 2000, "in reliance on [the power company's] representations that the [l]ease was in force and effect and would continue to be in force regardless of any permit issues, [Lighthouse] entered into a binding contract for the purchase of a high speed ferry specifically for use for the ferry service contemplated at the [l]eased [p]remises for a cost of approximately $5,200,000." Paragraphs seventeen and eighteen, respectively, alleged that, "[o]n or about July 19, 2000, Lighthouse paid the shipbuilder an additional nonrefundable deposit of $236,500 in connection with the aforementioned contract" and that, "[o]n or about August 3, 2000, contrary to its representations [in the July 17, 2000 letter, the power company] sent a notice to . . . Lighthouse attempting to terminate the [l]ease pursuant to [article six] of the [l]ease because Lighthouse had not yet obtained the governmental permits." Paragraph nineteen alleged that the reason why the power company wanted to terminate the lease was because, unbeknownst to Lighthouse, the power company had been negotiating a lucrative deal with another party, Strand/BRC Group, LLC (Strand), to purchase the leased premises. On the basis of these allegations, Lighthouse sought an award of damages for the power company's allegedly wrongful termination of the lease on six different grounds, including breach of lease (count one), promissory estoppel (count two), breach of the duty of good faith and fair dealing (count three), intentional misrepresentation (count four), negligent misrepresentation (count five) and violation of CUTPA (count six).

---

[7] In its letter to Lighthouse, the power company replied: "In response to your letter dated July 10, 2000, [t]he [power company] acknowledges that the lease between [Lighthouse] and [the power company] remains in full force and effect. I ask that Lighthouse use its best efforts to complete its permitting process in as timely a manner as possible.

"[The power company] looks forward to what we believe will be a mutually beneficial relationship with [Lighthouse]."

"On October 13, 2000, the power company filed an action for a judgment declaring that the lease with Lighthouse had been terminated properly and was 'of no further force and effect.' On December 7, 2000, the two actions were consolidated and transferred to the Complex Litigation Docket at Stamford. On December 21, 2000, during a pretrial conference on other matters pending in the consolidated actions, the trial court expressed its view that, under applicable [case law], the power company had terminated the lease 'fairly [and] properly' in accordance with its provisions . . . but that the court could reinstate the lease on equitable grounds. The court also informed the parties that it intended to proceed with a trial to the court on the declaratory judgment action while discovery continued [in] the civil action." *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, supra, 279 Conn. 96.

Thereafter, Lighthouse filed an answer, six special defenses making allegations against the power company similar to those it had made in its civil action for damages, and a counterclaim in the declaratory judgment action.[8] Paragraph three of the counterclaim

[8] In its first special defense, entitled "[m]odification," Lighthouse alleged that "[t]he [p]arties verbally, through their actions, and in writing in or about July, 2000, modified the terms of the [l]ease by agreeing that all provisions of [a]rticle [six] of the [l]ease as they pertained to termination were void and of no force and effect, and by further agreeing instead that [Lighthouse] should use its best efforts to complete its permitting process in as timely a manner as possible."

In its second special defense, entitled "[e]quitable [e]stoppel," Lighthouse alleged in relevant part that the power company, "through its misleading conduct, induced [Lighthouse], to [Lighthouse's] detriment, to invoke a provision of the [l]ease in May, 2000, that created a right in favor of the [power company] to terminate the [l]ease. . . ."

In its third special defense, entitled "[b]reach of [c]ovenant of [g]ood [f]aith and [f]air [d]ealing," Lighthouse alleged in relevant part that the power company, "through its misrepresentations and failure to disclose information, wrongfully induced [Lighthouse], to [Lighthouse's] detriment, to invoke a provision of the lease in May, 2000, that created a right in favor of the [power company] to terminate the [l]ease. . . ."

In its fourth special defense, entitled "[w]aiver and [e]stoppel," Lighthouse alleged that "[i]n or about July, 2000, [the power company], by its acts and conduct, expressly and implicitly waived and relinquished any right it might

have acquired from [Lighthouse] to terminate the [l]ease, and is equitably estopped from terminating the [l]ease subsequent to its waiver. Specifically, the [power company] waived its acquired right to terminate the [l]ease in the following manner:

"1. On repeated occasions, the [power company] solicited [Lighthouse's] assurance of [its] intention to remain a tenant throughout the entire duration of the [l]ease, notwithstanding [the power company's] knowledge of [Lighthouse's] inability to obtain all applicable permits under the [l]ease within the time stated in the [l]ease.

"2. In response to the [power company's] actions and assertions which demonstrated the [power company's] ongoing concern that [Lighthouse] would terminate the [l]ease, [Lighthouse] deemed that the parties' rights under the termination provisions of [a]rticle [six] of the [l]ease—the existence of which both parties had knowledge—were void and of no force and effect, and solicited [the power company's] confirmation that . . . the [l]ease remained in force and effect.

"3. In response to [Lighthouse's] action, on July 17, 2000, the [power company]: a) confirmed receipt of [Lighthouse's] correspondence dated July 10, 2000, deeming the [termination] provisions of [a]rticle [six] of the [l]ease as void and of no force and effect; b) acknowledged that the [l]ease remained in full force and effect; c) modified the time requirements of [a]rticle [six] concerning the acquisition of permits by substituting an obligation that [Lighthouse] . . . use its best efforts to complete its permitting process in as timely a manner as possible; and d) stated that [it] looked forward to a mutually beneficial relationship with [Lighthouse].

"4. [The power company's] response failed to refute [Lighthouse's] assertion that the termination provision of the [l]ease was void and of no force and effect.

"5. In reliance upon the [power company's] waiver of rights under the termination provision of the [l]ease, [Lighthouse] expended substantial sums and obligated itself to purchase a boat in furtherance of its agreement to operate a ferry service from the [leased premises].

"Through its actions, representations and failure to refute [Lighthouse's] assertion, the [power company] created a reasonable expectation in [Lighthouse] that the [power company] consented to [Lighthouse's] position that the termination provisions of the [l]ease as to the rights of both parties were void and of no effect. In reliance upon that reasonable expectation, [Lighthouse] acted to its detriment. As a result of the [power company's] waiver, the [power company] is estopped from terminating the [l]ease."

In its fifth special defense, entitled "[e]quitable [n]on-[f]orfeiture," Lighthouse alleged in relevant part that "[a]ssuming . . . that the [power company] properly terminated the [l]ease, [Lighthouse] is entitled to reinstatement of the [l]ease and relief from forfeiture as a result of one or more of the following:

"1. The [power company] is not entitled to the relief sought in its complaint for the reason that the [power company] comes before the court with unclean hands by wrongfully inducing [Lighthouse] to grant the [power company] the right to terminate, and by wrongfully terminating the [l]ease after it had waived its right to do so. . . ."

In its counterclaim, Lighthouse alleged that "[t]he termination of the [l]ease was improper and ineffective for the reasons articulated in [Light-

expressly incorporated the allegations in the six special defenses, providing that "[t]he termination of the [l]ease was improper and ineffective for the reasons articulated in [Lighthouse's] [s]pecial [d]efenses . . . ." Thus, in both the civil and declaratory judgment actions, Lighthouse made allegations in support of its claim that the lease had been terminated improperly that referred to conduct by the power company both before and after Lighthouse exercised the lease extension option.

During the subsequent trial to the court in the declaratory judgment action, witnesses gave extensive testimony regarding communications between the parties during May, June and July, 2000, regarding the lease, the acquisition of permits by Lighthouse and the power company's expressed interest in retaining Lighthouse as a tenant. Following the trial, "the court issued a memorandum of decision dated August 28, 2002 . . . in which it concluded that the lease had been terminated properly in accordance with article six . . . but that the lease should be reinstated pursuant to the doctrine of equitable nonforfeiture. The trial court concluded that 'forfeiture of the lease would destroy [Lighthouse's] contemplated high speed ferry operation at that site and substantially affect [Lighthouse's] large capital investment in that operation. [Furthermore, Lighthouse] is willing to pay the back rent. [The power company] will not lose the benefit of its November 30, 1999 lease.' " *Connecticut Light & Power Co.* v. *Lighthouse*

house's] [s]pecial [d]efenses" and that, "[a]s a result of the [power company's] violation of the [l]ease [Lighthouse] has suffered damages." Lighthouse's counterclaim further alleged that, because the power company was in breach of its obligations under the lease, it was liable to pay Lighthouse attorney's fees.

Lighthouse then made four requests for relief, including: "[a] declaratory judgment reinstating the [l]ease and all [of Lighthouse's] rights and privileges thereunder," a judgment declaring "that the provisions of [a]rticle [six] of the [l]ease pertaining to termination of the [l]ease are void and of no effect," attorney's fees and costs, and "[s]uch other relief as in law and equity may appertain."

*Landings, Inc.*, supra, 279 Conn. 97–98. The trial court's conclusions were based on its findings that Lighthouse had proven the seven allegations of its fifth special defense and the issues in its counterclaim.[9]

"On December 4, 2003, Lighthouse . . . filed an application for prejudgment remedy in its civil action against the power company. Lighthouse sought to secure itself with respect to rent claimed due by the power company in connection with the declaratory judgment action, attorney's fees and costs and the nonrefundable costs Lighthouse had incurred to acquire the ferry boat. . . .

"On March 5, 2004, the trial court . . . granted Lighthouse's application for prejudgment remedy on the ground that there was probable cause that Lighthouse would recover damages in its action against the power company. The court granted relief consisting of $420,000 for attorney's fees, $237,500 for costs incurred to acquire the ferry boat and $393,749.96 for rent owed to the power company pursuant to the lease from August, 2000, to January, 2003, which it rounded off to a total recovery of $1,050,000." Id., 99–100.

"On March 10, 2004, the power company appealed from the trial court's judgment in the declaratory judgment action . . . . That same day, the power company also appealed from the trial court's judgment in the civil action, challenging the March 5, 2004 decision granting Lighthouse's application for prejudgment remedy." Id., 100. The appeals were consolidated, and, "[o]n Novem-

---

[9] The court explained: "[Lighthouse] has proven the seven allegations of its fifth special defense. The issues of the fifth special defense are found for [Lighthouse]. . . . The issues on [Lighthouse's] counterclaim are found for [Lighthouse]. . . .

"The court having found the equitable issues for [Lighthouse] in its fifth special defense grants relief from forfeiture of the lease. The court having found the issues for [Lighthouse] in its counterclaim hereby reinstates the November 30, 1999 lease."

ber 14, 2005, we transferred the consolidated appeal[s] from the Appellate Court to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1." Id., 102.

The power company subsequently requested an articulation of the trial court's ruling on its application for prejudgment remedy. The court explained, with respect to the award of costs for the nonrefundable ferry boat deposit, that Lighthouse had "acted in reasonable reliance on the continued validity of the lease when it signed the [ferry boat] contract and paid the [deposit]." The court further characterized the nonrefundable deposit as "an 'ascertainable loss of money or property' under General Statutes § 42-110g (a) entitling [Lighthouse] to a CUTPA award."

On appeal to this court, the power company claimed, inter alia, with respect to the declaratory judgment action, that the trial court improperly had reinstated the lease pursuant to the doctrine of equitable nonforfeiture and improperly had denied the power company's motion for payment of back rent. *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, supra, 279 Conn. 102. As this court explained in *Lighthouse Landings*, "Lighthouse argue[d] that the trial court properly reinstated the lease on the ground that the power company wrongfully had induced Lighthouse to exercise the lease extension option. . . . Lighthouse specifically contend[ed] that article six did not require it to choose between terminating the lease or seeking a sixty day extension, but merely granted Lighthouse the right to make such a choice, and that it could have remained a tenant even without exercising the sixty day extension upon failing to obtain the required permits within the first 180 days. Lighthouse further argue[d] that the power company wrongfully induced it to exercise the sixty day extension so that the power company would acquire the right to terminate the lease if Lighthouse

did not satisfy the permit requirement within the next sixty days. Lighthouse suggest[ed] that the power company wanted to acquire this right because it was negotiating to sell the property to another party and termination of the lease would eliminate the cost of relocating the ferry service operation should the sale take place. Lighthouse thus argue[d] that the power company did not act in good faith in urging it to exercise the sixty day extension and, accordingly, the trial court properly reinstated the lease under the doctrine of equitable nonforfeiture." Id., 106–107.

This court, however, rejected Lighthouse's argument and agreed with the power company that "the lease was contingent on Lighthouse obtaining the applicable governmental permits" and that "Lighthouse was obligated either to terminate or to extend the lease after the first 180 days should it fail to obtain the required permits and approvals." Id., 107. We thus concluded that "the trial court improperly reinstated the lease on the grounds that it was not contingent on obtaining the required permits and that the power company wrongfully had induced Lighthouse to exercise the lease extension option." Id. The court explained in a footnote that, on remand, the trial court would be required to consider Lighthouse's damages claims in light of our resolution of the power company's appeals.[10] Id., 115 n.17.

On remand, the trial court afforded Lighthouse the opportunity to amend its complaint in the civil action

[10] Because the trial court granted Lighthouse's application for prejudgment remedy in the civil action on the basis of the court's conclusion in the declaratory judgment action, we also reversed the judgment of the trial court in the civil action and directed the trial court, on remand, to deny Lighthouse's application for prejudgment remedy. *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, supra, 279 Conn. 114–15. This aspect of the power company's appeal in *Lighthouse Landings*, however, has no bearing on the issues raised in the present appeal.

to take account of the potentially preclusive effect that our decision in *Lighthouse Landings* might have on that action, but Lighthouse declined to do so. Lighthouse continued to rely on its revised complaint dated May 20, 2004, to which the power company had filed an answer, five special defenses[11] and a four count counterclaim[12] on September 10, 2004.

On February 1, 2007, the power company filed a motion for summary judgment, alleging that Lighthouse was collaterally estopped from litigating the issues raised in the civil action on the basis of this court's decision in *Lighthouse Landings*. Lighthouse filed an objection to the motion as well as a cross motion for summary judgment, seeking damages for payment of the nonrefundable ferry boat deposit and a refund of rent paid to the power company following reinstatement of the lease in 2003. In a memorandum of decision dated April 4, 2007, the trial court agreed with the power company that Lighthouse was estopped by this court's decision in *Lighthouse Landings* from litigating its claims of breach of lease, breach of the duty of good faith and fair dealing, and promissory estoppel and granted the power company's motion for summary judgment with respect to those claims.[13] The court denied the motion as to Lighthouse's claims of negligent misrepresentation, intentional misrepresentation and violation of CUTPA, concluding that "collateral estoppel . . . does not lie" as to those counts and that genuine issues of material fact remained.[14] The power company appealed from that decision, claiming that (1) the trial court improperly had construed this court's remand

[11] The five special defenses included collateral estoppel, waiver, equitable estoppel, election of remedies and fraud in the inducement.

[12] The counterclaim alleged fraud, breach of contract, violation of CUTPA and fraudulent conveyance.

[13] Lighthouse has not appealed from the trial court's decision regarding those claims, and, accordingly, they are not the subject of this appeal.

[14] The trial court denied Lighthouse's cross motion for summary judgment.

order in *Lighthouse Landings*, (2) Lighthouse was collaterally estopped from pursuing its remaining three claims by this court's decision in *Lighthouse Landings*, and (3) in light of the issues resolved in *Lighthouse Landings*, Lighthouse would be unable to prove the essential elements of those claims. Following oral argument, this court requested that the parties file supplemental briefs on the issue of whether Lighthouse's remaining claims in the civil action are barred by the trial court's judgment in the declaratory judgment action under the doctrine of res judicata.

Having considered the issues in light of the entire records in both the civil and declaratory judgment actions, we agree with Lighthouse that the trial court correctly construed the remand order in *Lighthouse Landings*. We also agree with Lighthouse that *this* court's decision in *Lighthouse Landings* does not preclude, on collateral estoppel grounds, further litigation of Lighthouse's misrepresentation and CUTPA claims. We conclude, however, that Lighthouse is precluded under the doctrine of res judicata from litigating those claims in the present action because they were raised and fully litigated before the trial court in the declaratory judgment action. We thus need not reach the issue of whether Lighthouse would be able to prove the essential elements of its misrepresentation and CUTPA claims.

## II

The power company first contends that the trial court improperly construed this court's directive in *Lighthouse Landings* to consider Lighthouse's claims for damages in the civil action in light of our decision in that case, and that if the court had acted in accordance with that directive, it would have concluded that Lighthouse's remaining claims are precluded by the doctrine of collateral estoppel. Specifically, the power company

maintains that the trial court failed to follow what the power company characterizes as this court's mandate "to engage in a thorough analysis of the preclusive effect of [*Lighthouse Landings*] on the [civil] action," and that the trial court's failure to engage in that analysis deprived the power company of "the consideration contemplated by this court." Lighthouse asserts that the trial court's memorandum of decision on the power company's motion for summary judgment clearly indicates that the trial court followed this court's mandate in *Lighthouse Landings* to consider the preclusive effect that our decision in that case might have on Lighthouse's civil action. We agree with Lighthouse.

"As a preliminary matter, we set forth the standard by which we review the defendant's claim that the court failed to follow the instruction of our first opinion. Well established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted in light of the opinion. . . . This is the guiding principle that the trial court must observe. . . . Compliance means that the direction is not deviated from. . . . It is the duty of the trial court on remand to comply strictly with the mandate of [this] court according to its true intent and meaning. No judgment other than that directed or permitted by the reviewing court may be rendered, even though it may be one that [this] court might have directed. The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein." (Internal quotation marks omitted.) *Lega Siciliana Social Club, Inc.* v. *St. Germaine*, 91 Conn. App. 328, 332, 880 A.2d 195, cert. denied, 276 Conn. 913, 886 A.2d 425 (2005).

The following additional facts are necessary to our resolution of the power company's claim. In footnote 17 of our opinion in *Lighthouse Landings*, we stated:

"On remand, the trial court will be required to consider, in light of this decision, Lighthouse's claim for damages arising from the power company's alleged breach of lease, unfair trade practices, intentional misrepresentation, negligent misrepresentation and breach of the duty of good faith and fair dealing." *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, supra, 279 Conn. 115 n.17. The trial court expressly acknowledged this responsibility in its memorandum of decision, which commenced with a recitation of footnote 17 of *Lighthouse Landings.* The trial court thereafter explained that the power company's motion for summary judgment was predicated on the theory that, under *Lighthouse Landings*, Lighthouse was collaterally estopped from pursuing its civil action against the power company. The trial court then concluded that the doctrine of collateral estoppel barred Lighthouse from pursuing its claims against the power company alleging breach of lease, breach of the duty of good faith and fair dealing, and promissory estoppel and, accordingly, rendered judgment for the power company on those claims. The trial court, however, rejected the power company's collateral estoppel claim with respect to Lighthouse's claims of intentional misrepresentation, negligent misrepresentation and violation of CUTPA and, therefore, denied the power company's motion for summary judgment as to those claims.

It is plain from the language of the trial court's memorandum of decision that the court properly followed the directive of this court as reflected in footnote 17 of *Lighthouse Landings.* As previously explained, the very first line of the trial court's memorandum of decision acknowledges the procedural posture of the case and quotes that footnote verbatim. In deciding the power company's motion for summary judgment on the basis of collateral estoppel, the trial court necessarily considered the possible preclusive effect that our opin-

ion in *Lighthouse Landings* had on Lighthouse's damages claims, concluding, ultimately, that summary judgment was warranted with respect to three of those claims. It is apparent, therefore, that the trial court properly considered the viability of Lighthouse's claims, as directed, in light of the power company's contention that our opinion in *Lighthouse Landings* barred Lighthouse from further litigation of those claims.

## III

We next consider the power company's claim that the trial court improperly concluded that the doctrine of collateral estoppel does not preclude Lighthouse from pursuing its misrepresentation and CUTPA claims. The power company maintains that our decision in *Lighthouse Landings* bars Lighthouse from litigating those claims. Lighthouse responds that that decision, in which we rejected the trial court's determination that the power company wrongfully had induced Lighthouse to exercise the lease extension option, was based almost entirely on an interpretation of article six of the lease and did not address, let alone decide, the issues relevant to Lighthouse's misrepresentation and CUTPA claims, which are predicated on conduct by the power company that occurred in July, 2000, *after* Lighthouse had exercised the lease extension option. We agree with Lighthouse.

We begin by setting forth the well established legal principles underlying the doctrine of collateral estoppel. "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . . .

For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . .

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent [on] the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta." (Citations omitted; internal quotation marks omitted.) *Lyon* v. *Jones*, 291 Conn. 384, 406, 968 A.2d 416 (2009).

Additionally, "[a]pplication of the doctrine of collateral estoppel is neither statutorily nor constitutionally mandated. The doctrine, rather, is a judicially created rule of reason that is enforced on public policy grounds. . . . Accordingly, as we have observed in regard to the doctrine of res judicata, the decision whether to apply the doctrine of collateral estoppel in any particular case should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim. . . . These [underlying] purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." (Citation omitted; internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 58–59, 808 A.2d 1107 (2002). We also have explained that "[c]ourts should

be careful that the effect of the doctrine does not work an injustice. . . . Thus, [t]he doctrines of preclusion . . . should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Citation omitted; internal quotation marks omitted.) Id., 59–60. Application of the doctrine of collateral estoppel is a question of law over which we exercise plenary review. E.g., *Albahary* v. *Bristol*, 276 Conn. 426, 444, 886 A.2d 802 (2005).

In *Lighthouse Landings*, this court held that (1) "the trial court improperly reinstated the lease under the doctrine of equitable nonforfeiture" because Lighthouse was required under article six either to terminate or to extend the lease after the first 180 days if it failed to obtain the applicable permits or approvals, and, therefore, the power company did not wrongfully induce Lighthouse to extend the lease; *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, supra, 279 Conn. 112; (2) "the power company had no obligation under the lease to inform Lighthouse that it was negotiating with another party to sell the property"; id., 113; and (3) "[b]ecause the trial court granted the prejudgment remedy on the basis of its determination that the power company wrongly had induced Lighthouse to extend the lease . . . the . . . court improperly granted the application for prejudgment remedy." Id., 114–15. Thus, our decision in *Lighthouse Landings* addressed the power company's allegedly improper inducement of Lighthouse to exercise the lease extension option in May, 2000, and did not address the power company's subsequent conduct, including the representations in its July 17, 2000 letter that purportedly induced Lighthouse to make a nonrefundable deposit of $236,500 to purchase a high speed ferry boat.

To the extent that the power company correctly asserts that Lighthouse referred to the July, 2000 communications that allegedly induced it to enter into a binding contract to purchase the high speed ferry boat, those references were made only in the context of Lighthouse's discussion of the factual basis underlying the claims at issue. The power company's contention that Lighthouse relied on the July, 2000 communications at oral argument before this court also is unavailing. Counsel for Lighthouse referred to the July, 2000 communications twice during that argument, but in both instances the argument was purely incidental to the dispute that was the subject of the appeal.

In other words, even if we were to conclude that Lighthouse raised the issue of the July, 2000 communications on appeal in *Lighthouse Landings*, our decision did not address that issue, and our analysis and reversal of the judgment of the trial court did not depend on this court's consideration or resolution of that issue. The fairness or propriety of the power company's conduct with regard to its July 17, 2000 letter, which was the principal basis for Lighthouse's misrepresentation and CUTPA claims, was not decided, either explicitly or implicitly, by this court in *Lighthouse Landings*. Accordingly, further litigation of those claims is not barred under the doctrine of collateral estoppel by our decision in *Lighthouse Landings*.

IV

We next consider whether Lighthouse's misrepresentation and CUTPA claims are barred under the doctrine of res judicata by virtue of the trial court's decision in the declaratory judgment action.[15] Lighthouse contends

[15] As previously noted, following oral argument, this court requested that the parties file supplemental briefs on the applicability of the doctrine of res judicata. Although the power company did not move for summary judgment on res judicata grounds, and the trial court did not consider the doctrine in ruling on the power company's motion, res judicata has been invoked by reviewing courts sua sponte in prior cases to promote the doctrine's

that res judicata does not apply because (1) the claim resolved in the declaratory judgment action differs from the misrepresentation and CUTPA claims, (2) Lighthouse did not have an adequate opportunity in the declaratory judgment action to litigate the damages claims that it asserted in the civil action, and (3) in light of the fact that the only claim decided in the declaratory judgment action related to whether the power company properly had terminated the lease, Lighthouse is entitled to pursue its remaining damages claims because, under § 33 of the Restatement (Second) of Judgments, a declaratory judgment action does not have a claim preclusive effect beyond what actually was decided in that action. The power company argues in opposition that Lighthouse, in electing to assert a counterclaim in the declaratory judgment action, became a plaintiff in that action, which, in turn, subjected it to the risk of claim preclusion because its claims arose from the same transaction as the claims and defenses in the declaratory judgment action. We agree with the power company that Lighthouse's misrepresentation and CUTPA claims are barred by res judicata.

"[T]he applicability of res judicata . . . presents a question of law over which we employ plenary review." *Weiss* v. *Weiss*, 297 Conn. 446, 458, 998 A.2d 766 (2010). "The principles that govern res judicata are described in [the Restatement (Second) of Judgments] . . . . The

underlying purpose of judicial economy and repose. See, e.g., *Legassey* v. *Shulansky*, 28 Conn. App. 653, 654, 611 A.2d 930 (1992); see also *Somers* v. *Chan*, 110 Conn. App. 511, 540 and n.20, 955 A.2d 667 (2008); *Honan* v. *Dimyan*, 63 Conn. App. 702, 706 and n.10, 778 A.2d 989, cert. denied, 258 Conn. 942, 786 A.2d 430 (2001). Our invitation to the parties to file supplemental briefs on the issue also satisfies the rule of practice requiring that the doctrine be specially pleaded. See Practice Book § 10-50; see also *Zizka* v. *Water Pollution Control Authority*, 195 Conn. 682, 687, 490 A.2d 509 (1985); *Tucker* v. *Pace Investment Associates*, 32 Conn. App. 384, 391, 629 A.2d 470, cert. denied, 228 Conn. 906, 634 A.2d 299 (1993), cert. denied sub nom. *Tucker* v. *Pace Investments*, 510 U.S. 1196, 114 S. Ct. 1305, 127 L. Ed. 2d 657 (1994).

basic rule is that of § 18, which [provides] in relevant part: 'When a valid and final personal judgment is rendered in favor of the plaintiff: (1) [t]he plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment . . . .' As comment (a) to § 18 explains, '[w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be "merged" in the judgment.' Our . . . case law has uniformly approved and applied the principle of claim preclusion or merger. . . .

"Because the operative effect of the principle of claim preclusion or merger is to preclude relitigation of the 'original claim,' it is crucial to define the dimensions of that 'original claim.' The Restatement (Second) [of Judgments] provides, in § 24, that 'the claim [that is] extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' In amplification of this definition of 'original claim,' § 25 of the Restatement (Second) [of Judgments provides] that '[t]he rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) [t]o present evidence or grounds or theories of the case not presented in the first action, or (2) [t]o seek remedies or forms of relief not demanded in the first action.'

"The transactional test of the Restatement [(Second) of Judgments] provides a standard by which to measure the preclusive effect of a prior judgment, which we have held to include 'any claims relating to the cause of action which were actually made or might have been made.' . . . In determining the nature of a cause of action for these purposes, we have long looked to the 'group of facts which is claimed to have brought about an unlawful injury to the plaintiff' . . . and have noted that '[e]ven though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action.' " (Citations omitted.) *Duhaime* v. *American Reserve Life Ins. Co.*, 200 Conn. 360, 364–65, 511 A.2d 333 (1986); see also *Fink* v. *Golenbock*, 238 Conn. 183, 191–92, 680 A.2d 1243 (1996); *DeMilo & Co.* v. *Commissioner of Motor Vehicles*, 233 Conn. 281, 294, 659 A.2d 162 (1995); *Orselet* v. *DeMatteo*, 206 Conn. 542, 545–46, 539 A.2d 95 (1988).

The Restatement (Second) of Judgments further explains, with respect to how far the witnesses or proof in the second action would tend to overlap the witnesses or proof relevant to the first, "[i]f there is a substantial overlap, the second action should ordinarily be held precluded. But the opposite does not hold true; even when there is not a substantial overlap, the second action may be precluded if it stems from the same transaction or series." 1 Restatement (Second), Judgments § 24, comment (b) (1982). Similarly, "[w]hen a defendant is accused of successive but nearly simultaneous acts, or acts which though occurring over a period of time were substantially of the same sort and similarly motivated, fairness to the defendant as well as the public convenience may require that they be dealt with in the same action." Id., comment (d).

"Our rules of res judicata are based on the public policy that a party should not be allowed to relitigate a matter which it already has had an opportunity to

litigate. . . . [T]he purpose of a law suit is not only to do substantial justice but to bring an end to controversy. [F.] James & [G.] Hazard, Civil Procedure (3d Ed. 1985) § 11.2, p. 590." (Citations omitted; internal quotation marks omitted.) *Duhaime* v. *American Reserve Life Ins. Co.*, supra, 200 Conn. 363–64. "[T]he purposes of res judicata [of] promoting judicial economy, minimizing repetitive litigation, preventing inconsistent judgments and providing repose to parties . . . [however, must be] balanced against the competing interest of the plaintiff in the vindication of a just claim. . . . Indeed, we have recognized that the application of res judicata can yield harsh results . . . and, as a result, have stated that the doctrine should be flexible and must give way when [its] mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Citations omitted; internal quotation marks omitted.) *Weiss* v. *Weiss*, supra, 297 Conn. 465–66.

In the present case, application of the transactional test requires us to balance these competing interests in favor of judicial economy and repose and to conclude that Lighthouse's misrepresentation and CUTPA claims are barred by res judicata because, "[e]ven though a single group of facts[16] may give rise to rights for several different kinds of relief, it is still a single cause of action." (Internal quotation marks omitted.) *Weiss* v. *Weiss*, supra, 297 Conn. 461–62. Under the conceptual framework set forth in the Restatement (Second) of Judgments, which we follow, the facts and theories that Lighthouse alleged in the civil action and the declara-

---

[16] We treat all of Lighthouse's allegations regarding the power company's conduct from May through July, 2000, as relating to a single "transaction," or cause of action, because they pertained to conduct connected with, and leading up to, the termination of the lease. See 1 Restatement (Second), supra, § 24, comment (b) ("[i]n general, the expression connotes a natural grouping or common nucleus of operative facts").

tory judgment action were the same; see part I and footnotes 5 and 8 of this opinion; and were intended to support its single, underlying claim that the power company improperly had terminated the lease. Thus, when the trial court rendered a final judgment for Lighthouse in the declaratory judgment action after finding for Lighthouse on its fifth special defense and on the issues in its counterclaim, the right of Lighthouse to pursue additional remedies in its civil action was extinguished.

We disagree with Lighthouse that it is entitled to assert its misrepresentation and CUTPA claims because they are different from the claim that the trial court resolved in the declaratory judgment action. We acknowledge that the fifth special defense, on which the trial court relied in part in the declaratory judgment action, alleged that the power company wrongfully induced Lighthouse in May, 2000, to exercise the lease extension option, whereas the misrepresentation and CUTPA claims in the civil action allege that verbal and written communications between the parties in July, 2000, caused Lighthouse to believe in the continued validity of the lease and to spend substantial funds on the purchase of a high speed ferry boat. It is undeniable, however, that *all* of the allegations and theories asserted in both actions were intended to support the single underlying claim that the power company wrongfully had terminated the lease. Accordingly, Lighthouse is barred by res judicata from pursuing its misrepresentation and CUTPA claims.

We also disagree with Lighthouse that it did not have an adequate opportunity to litigate its misrepresentation and CUTPA claims in the declaratory judgment action. The record demonstrates that Lighthouse and the power company presented the court with witnesses, testimony and exhibits relating to all of the parties' communications from May through July, 2000. These

communications included the July 10, 2000 letter from Lighthouse to the power company requesting confirmation that the lease would remain in full force and effect and the July 17, 2000 letter from the power company to Lighthouse responding that the lease remained in effect and that the power company looked forward to a "mutually beneficial relationship . . . ." Accordingly, we conclude that Lighthouse had an adequate opportunity to litigate its misrepresentation and CUTPA claims in the declaratory judgment action.

We finally disagree with Lighthouse that the trial court's judgment in the declaratory judgment action has no preclusive effect because it was limited to the matters addressed in the court's declaration. Under § 33 of the Restatement (Second) of Judgments, "[a] valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared, and, in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action." 1 Restatement (Second), supra, § 33. It thus would appear that Lighthouse is correct in maintaining that the judgment in the declaratory judgment action has no preclusive effect on its claims for damages in the civil action because the decision in the declaratory judgment action was based solely on the power company's allegedly wrongful conduct in persuading Lighthouse to exercise the lease extension option under article six of the lease, and not on any conduct by the parties after that time, which formed the basis for Lighthouse's misrepresentation and CUTPA claims. Lighthouse, however, filed a counterclaim in the declaratory judgment action, in which it effectively became a plaintiff with respect to the claims brought therein. 1 Restatement (Second), supra, § 21, comment (a). Section 21 of the Restatement (Second) of Judgments provides in relevant part that, "[w]here

the defendant interposes a counterclaim on which judgment is rendered in his favor, the rules of merger are applicable to the claim stated in the counterclaim . . . ." Id., § 21 (1). In the declaratory judgment action, the trial court not only found in favor of Lighthouse on its fifth special defense but also on the issues raised in its counterclaim, which incorporated all of the allegations in the six special defenses. Accordingly, the trial court's judgment for Lighthouse on the issues in the counterclaim has a preclusive effect on its misrepresentation and CUTPA claims in the civil action because the six special defenses and the claims in the civil action are based on the same factual allegations.

In short, if Lighthouse is allowed to proceed with its misrepresentation and CUTPA claims, the trial court will be *retrying* Lighthouse's underlying claim that the power company improperly terminated the lease. We therefore conclude that res judicata applies to the remaining claims in the civil action because the issue of whether the power company improperly terminated the lease was fully and fairly litigated and finally decided by the trial court in the declaratory judgment action. See, e.g., *Weiss* v. *Weiss*, supra, 297 Conn. 462–67 (res judicata barred claims concerning division of law firm assets because claims involved property that had been divided in prior dissolution action); *Duhaime* v. *American Reserve Life Ins. Co.*, supra, 200 Conn. 362–66 (res judicata barred CUTPA action because claim asserted therein arose from same facts alleged in prior breach of contract action); *Tuccio Custom Homes, LLC* v. *Lamonica*, 116 Conn. App. 527, 528–30, 975 A.2d 1280 (2009) (res judicata applied to breach of contract claim for improper inspection of construction site because claim arose from same common nucleus of operative facts alleged in prior action alleging breach of contract for failure to close on property).

The dissent argues that the trial court's decision in the declaratory judgment action has no preclusive effect for two reasons. First, "a declaratory judgment action in which the parties seek solely to obtain declaratory relief does not bar a subsequent action for injunctive relief or damages arising out of the same transaction, even when the second action is predicated on the same claims and evidence adduced in the declaratory judgment action." Second, "when . . . the parties agree to a stay of one action pending the outcome of a second action, the judgment rendered in the second action has no preclusive effect on the action that has been stayed." Under the facts of this case, we reject both arguments.

We agree with the dissent that a declaratory judgment, in and of itself, has no res judicata effect on any other claims brought, or to be brought, in a separate action. That, however, was not the case here because Lighthouse responded to the power company's complaint in the declaratory judgment action by seeking, and receiving, other relief from enforcement of the lease, thus transforming the declaratory judgment action into something more than would appear by nomenclature alone.

We also agree with the dissent that the trial court in the present case tried the declaratory judgment action after staying the civil action but reject the dissent's argument that, because the trial court stayed the civil action pending the outcome of the declaratory judgment action, the judgment in the declaratory judgment action has no preclusive effect on the civil action. The dissent relies on the principle that, "when parties agree to try claims arising out of the same transaction in separate proceedings, the public policy behind the doctrine of res judicata, namely, repose and protecting defendants from vexatious or repetitive litigation, no longer is implicated." The principle of no preclusive effect does not apply in this case, however, because Lighthouse

requested equitable and legal relief in the declaratory judgment action on February 9, 2001, more than six weeks *after* the court stayed the civil action. The court also granted equitable and monetary relief,[17] as well as declaratory relief, in the declaratory judgment action. Accordingly, it cannot be said that the issue of whether the lease was properly terminated, which was raised by the power company in the declaratory judgment action, was clearly "split" from the claims raised by Lighthouse in the civil action for damages. Lighthouse provided significant evidence in support of its six special defenses and counterclaim and made all of the same factual allegations that it made in its civil action concerning wrongful inducement and misrepresentation, and it did so *after* the court stayed that action.

Furthermore, as the dissent observes, "it is significant to note that . . . it initially appeared that the declaratory judgment rendered by the court in the present action would resolve the parties' dispute without any further litigation. In fact, Lighthouse did not initially take an appeal from the court's judgment in that action." We agree with the dissent that the parties appeared to be satisfied with the trial court's judgment, but we believe that their satisfaction emanated from the issuance of a declaratory judgment in favor of the power company and equitable reinstatement of the lease in favor of Lighthouse. This was much more than a mere declaratory judgment. It also was a judgment granting equitable and legal relief.

Lighthouse could have obtained the ruling that it now seeks by requesting an articulation from the trial court in the declaratory judgment action as to its other special defenses and by presenting those defenses to this court in *Lighthouse Landings* as alternative grounds for

---

[17] In addition to reinstating the lease, the trial court also ordered Lighthouse to pay the power company all back rent due.

affirmance. See *Metropolitan District Commission* v. *AFSCME, Council 4, Local 3713 (1303-101)*, 35 Conn. App. 804, 805 n.1, 647 A.2d 755 (1994) (declining to address plaintiffs' alternative ground for affirmance because trial court did not base ruling on alternative ground raised, defendant failed to request articulation regarding court's disposition of claim at trial, and, on basis of record, reviewing court could not conclude that trial court would have been forced to rule in favor of plaintiff on claim). In particular, Lighthouse could have sought a ruling on its fourth special defense, in which it alleged waiver and estoppel on the ground that the power company had assured Lighthouse in July, 2000, as to the continued validity of the lease. Lighthouse, however, did not seek such a ruling, and, consequently, it cannot resurrect the claims that it failed to pursue in *Lighthouse Landings.*

The judgment is reversed in part and the case is remanded with direction to grant the defendant's motion for summary judgment on the plaintiff's misrepresentation and CUTPA claims and to render judgment for the defendant.

PALMER, J., dissenting. I agree with the majority's conclusion that the misrepresentation claims and claims under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., of the plaintiff, Lighthouse Landings, Inc. (Lighthouse), are not barred by the doctrine of collateral estoppel because, contrary to the contention of the defendant, Connecticut Light and Power Company (power company), the factual issues underlying those claims were not decided by the trial court or this court in *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, 279 Conn. 90, 900 A.2d 1242 (2006). I disagree, however, with the majority's conclusion that Lighthouse's claims

are barred by the doctrine of res judicata.[1] Specifically, the majority concludes that Lighthouse is barred from litigating its claims in the present damages action because it "filed a counterclaim in the declaratory judgment action, in which it effectively became a plaintiff with respect to the claims brought therein," and because, under § 21 (1) of the Restatement (Second) of Judgments, " '[w]here the defendant interposes a counterclaim on which judgment is rendered in his favor, the rules of merger[2] are applicable to the claim stated in the counterclaim . . . .' " The majority's conclusion violates two bedrock principles of res judicata. First, a declaratory judgment action in which the parties seek solely to obtain declaratory relief does not bar a

---

[1] I note that "[t]he preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of 'res judicata.' . . . Res judicata is often analyzed further to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion.' Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. See [1 Restatement (Second), Judgments § 27 (1982)]. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier [action]. Claim preclusion therefore encompasses the law of merger and bar. See id., [§ 24, introductory note]." (Citations omitted.) *Migra* v. *Warren City School District Board of Education*, 465 U.S. 75, 77 n.1, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984). Because the majority opinion refers to claim preclusion as res judicata, all references in this dissent to res judicata are intended to refer specifically to the claim preclusion prong of that doctrine.

[2] "Connecticut's res judicata rules are derived from the theory of merger and the transactional test set out in the Restatement (Second) of Judgments. . . . Merger, or the extinguishing of the plaintiffs' original claims through the rendering of final judgment, has its roots in early case law. *Fisher, Brown & Co.* v. *Fielding*, 67 Conn. 91, 118–19, 34 A. 714 (1895) (*Hammersley, J.*, dissenting). 'When the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be "merged" in the judgment.' 1 Restatement (Second), [supra] § 18." (Citations omitted.) *Legassey* v. *Shulansky*, 28 Conn. App. 653, 656, 611 A.2d 930 (1992).

subsequent action for injunctive relief or damages arising out of the same transaction, even when the second action is predicated on the same claims and evidence adduced in the declaratory judgment action. 1 Restatement (Second), Judgments § 33 (1982). Second, when, as in the present case, the parties agree to a stay of one action pending the outcome of a second action, the judgment rendered in the second action has no preclusive effect on the action that has been stayed. Id., § 26. Indeed, it undoubtedly is because of these well settled principles that the power company never raised the doctrine of res judicata as a defense in this action.[3] Accordingly, I respectfully dissent.

I

It is well established that "[t]he courts of this state follow the Restatement (Second) [of] Judgments, in applying the doctrine of res judicata. See *Orselet* v. *DeMatteo*, 206 Conn. 542, 544–46, 539 A.2d 95 (1988); *Duhaime* v. *American Reserve Life Ins. Co.*, 200 Conn. 360, 363–65, 511 A.2d 333 (1986)." *A.J. Masi Electric Co.* v. *Marron & Sipe Building & Contracting Corp.*, 21 Conn. App. 565, 567–68, 574 A.2d 1323 (1990). "The doctrine of res judicata is one of rest and is enforced on the ground of public policy. *Brady* v. *Anderson*,

---

[3] As the majority explains, following oral argument in this case, this court requested that the parties file supplemental briefs on the applicability of the doctrine of res judicata even though the power company never raised res judicata as a defense to Lighthouse's civil action. The majority cites three opinions of the Appellate Court, namely, *Somers* v. *Chan*, 110 Conn. App. 511, 540 and n.20, 955 A.2d 667 (2008), *Honan* v. *Dimyan*, 63 Conn. App. 702, 706 and n.10, 778 A.2d 989, cert. denied, 258 Conn. 942, 786 A.2d 430 (2001), and *Legassey* v. *Shulansky*, 28 Conn. App. 653, 654, 611 A.2d 930 (1992), to support the proposition that courts occasionally have invoked the doctrine of res judicata, sua sponte, in order to promote the doctrine's underlying policy of judicial economy and repose. In each of those cases, however, the applicability of the doctrine was readily apparent. By contrast, as I explain hereinafter, it is quite clear that the doctrine is inapplicable to the present case on the basis of two separate exceptions to the doctrine contained in the Restatement (Second) of Judgments.

110 Conn. 432, 435, 148 A. 365 [1930]. To prevent a multiplicity of actions, equity will enjoin further litigation of a cause of action which has already been adjudicated. A final judgment on the merits is conclusive on the parties in an action and their privies as to the cause of action involved. If the same cause of action is again sued on, the judgment is conclusive with respect to any claims relating to the cause of action which were actually made or might have been made." *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 316–17, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973). There are exceptions to the doctrine of res judicata, however, that, like the doctrine itself, are grounded in public policy considerations. One such exception is the declaratory judgment exception, which is set forth at § 33 of the Restatement (Second) of Judgments. Section 33 provides: "A valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared, and, in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action." 1 Restatement (Second), supra, § 33. Courts applying this section of the Restatement (Second) uniformly have interpreted it as limiting the preclusive effect of a declaratory judgment action solely to collateral estoppel—that is, to *issues* that were actually litigated and decided in the declaratory action and not to claims arising out of the same transaction, in particular, claims for injunctive relief and damages. See, e.g., *Duane Reade, Inc.* v. *St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 196 (2d Cir. 2010) ("[The declaratory judgment] exception [to res judicata] . . . limits the preclusive effect of the declaratory judgment to the subject matter of the declaratory relief sought . . . and permits the plaintiff or defendant to continue to pursue further declaratory or [injunctive] relief. . . . In other

words, the preclusive effect of a declaratory judgment action applies only to the matters declared and to any issues actually litigated . . . and determined in the action." [Citations omitted; internal quotation marks omitted.]); *Harborside Refrigerated Services, Inc.* v. *Vogel*, 959 F.2d 368, 372 (2d Cir. 1992) (when plaintiff in prior action sought only declaratory relief, preclusive effect of declaratory judgment was limited to subject matter of declaratory relief sought such that "[t]he plaintiff or defendant may continue to pursue further declaratory or [injunctive] relief"); *Horn & Hardart Co.* v. *National Rail Passenger Corp.*, 843 F.2d 546, 549 (D.C. Cir.) ("[when] a party asks only for declaratory relief, courts have limited the preclusive effect to the matters declared, hence permitting a later action seeking [injunctive] relief based on the same cause of action"), cert. denied, 488 U.S. 849, 109 S. Ct. 129, 102 L. Ed. 2d 102 (1988); *Cimasi* v. *Fenton*, 838 F.2d 298, 299 (8th Cir. 1988) (res judicata attaches only to precise issue presented and decided in prior declaratory judgment action); *Mandarino* v. *Pollard*, 718 F.2d 845, 847 (7th Cir. 1983) ("[§ 33 of the Restatement (Second) of Judgments] provides that a declaratory judgment bars relitigation of issues actually decided but does not preclude a later action seeking [injunctive] relief based on the same cause of action").

The public policy considerations underlying the declaratory judgment exception to the general principle of res judicata were explained by the United States Court of Appeals for the Second Circuit in *Harborside Refrigerated Services, Inc.* v. *Vogel*, supra, 959 F.2d 368: "A common purpose behind both declaratory judgment availability and the doctrine of res judicata is litigation reduction and the conservation of judicial resources. Declaratory relief enables . . . courts to clarify the legal relationships of parties before they have been disturbed thereby tending [toward] avoidance of full-

blown litigation. See *Travelers Insurance Co.* v. *Davis*, 490 F.2d 536, 543 (3d Cir. 1974). Similarly, res judicata operates to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. *Allen* v. *McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980); *Commissioner* v. *Sunnen*, 333 U.S. 591, 597, 68 S. Ct. 715, 92 L. Ed. 898 (1948). A requirement that parties to an action for declaratory relief bring all possible claims and counterclaims at that juncture or else be barred by res judicata, would undermine efficient adjudication and optimal use of judicial resources. Actions for declaratory relief would rapidly develop into full-scale legal contests, and the option of a preliminary suit limited to a declaration of the rights of the parties would evaporate. To permit res judicata to be applied in such a case beyond the precise issue before the court would subvert the very interests in judicial economy that the doctrine was designed to serve." (Internal quotation marks omitted.) *Harborside Refrigerated Services, Inc.* v. *Vogel*, supra, 373.

Thus, as one of the comments to § 33 of the Restatement (Second) of Judgments explains, "[a] plaintiff who wins a declaratory judgment may go on to seek further relief, even in an action on the same claim which prompted the action for a declaratory judgment. This further relief may include damages which had accrued at the time the declaratory relief was sought; it is irrelevant that the further relief could have been requested initially. . . . Nonmerger is justified by arguments based on the purpose of declaratory relief. A declaratory action is intended to provide a remedy that is simpler and less harsh than coercive relief, if it appears that a declaration might terminate the potential controversy. . . .

"A plaintiff who has lost a declaratory judgment action may also bring a subsequent action for other relief, subject to the constraint of the determinations made in the declaratory action. The theory is the same: a declaratory action determines only what it actually decides and does not have a claim preclusive effect on other contentions that might have been advanced. *That approach is also applicable with respect to a counterclaim by a defendant* . . . ." (Citations omitted; emphasis added.) 1 Restatement (Second), supra, § 33, comment (c).

It is undisputed that, in the declaratory judgment action at issue, Lighthouse sought and obtained declaratory relief; it did not seek either injunctive relief or damages. Specifically, in its counterclaim, Lighthouse requested, inter alia, a judgment declaring that article six of the lease was void, and the court rendered judgment in accordance with that request. Consequently, Lighthouse's misrepresentation and CUTPA claims fall squarely within the exception to res judicata set forth in § 33 of the Restatement (Second) of Judgments.

Notwithstanding the rule limiting the preclusive effect of a declaratory judgment to issues that were actually decided in that action—as distinguished from causes of action or claims arising out of the same transaction, which are not subject to preclusion—the majority concludes that, because Lighthouse filed a counterclaim in the declaratory judgment action, it was required to bring all of its claims in that action. In support of this assertion, the majority relies on § 21 (1) of the Restatement (Second) of Judgments. That provision, however, applies only to counterclaims that are filed in an action seeking damages or injunctive relief. As I have explained, § 33 of the Restatement (Second) of Judgments governs actions in which the parties seek only *declaratory relief.* Furthermore, it is well established that a defendant in a declaratory

judgment action may file a counterclaim for declaratory relief and that the same rules that apply to the plaintiff's declaratory request apply to the defendant's request, including the declaratory judgment exception to res judicata. See 1 W. Anderson, Actions for Declaratory Judgments (2d Ed. 1951) § 313, p. 724 (filing of counterclaim for declaratory relief and granting of declaratory relief on counterclaim "is . . . recognized as common practice" and is subject to same rules governing declaratory judgment actions generally). Accordingly, § 21 (1) of the Restatement (Second) of Judgments does not support the majority's conclusion that, by filing a counterclaim for declaratory relief in the declaratory judgment action, Lighthouse was required to bring all claims arising out of the same transaction.

The majority further asserts that merger should apply in this case because, in the declaratory judgment action, Lighthouse raised several special defenses to the power company's request for declaratory relief. Lighthouse raised those defenses, however, solely for the purpose of defeating the power company's request for a judgment declaring that it properly had terminated the parties' lease. The majority cites no authority, and my research has revealed none, to support the proposition that the declaratory judgment exception to the doctrine of res judicata does not apply if a party relies on certain evidence or defenses in a declaratory judgment action and then relies on the same evidence or defenses in a subsequent action for damages or injunctive relief arising out of the same transaction. Indeed, it is precisely *because* parties are likely to rely on the same arguments and evidence in both actions that the declaratory judgment exception exists, that is, to provide an incentive for parties to pursue declaratory relief by ensuring that the preclusive effect of the declaratory judgment will be limited solely to the issues that were actually decided. As comment (c) to § 33 of the Restatement

(Second) of Judgments makes clear, "the declaratory plaintiff . . . [is] permitted to make a partial presentation of his side of the controversy, in the hope of preventing a full-blown claim from arising, without thereby losing his chance to pursue or defend that claim at a later time."[4] 1 Restatement (Second), supra, § 33, comment (c). The majority's contrary conclusion is inconsistent with this rationale and also runs afoul of the oft-stated principle that, "[because] the application of [the] doctrine [of res judicata] has dramatic consequences for the party against whom it is applied, [this court] . . . 'should be careful that the effect of the doctrine does not work an injustice.' . . . Thus, '[t]he [doctrine] of [res judicata] . . . should be flexible and must give way when [its] mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies.' " (Citation omitted.) *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 602, 922 A.2d 1073 (2007). Indeed, the majority's conclusion that Lighthouse's misrepresentation and CUTPA claims are barred by res judicata ensures that, in the future, parties to declaratory judgment actions will be obliged to bring and litigate all other possible claims in those actions, thereby undermining the public policy favoring declaratory judgment actions. I therefore disagree with the majority that the claims that Lighthouse raised in the

---

[4] Indeed, it is significant to note that, consistent with the public policy underlying declaratory judgment actions, that is, to terminate controversies without protracted litigation over equitable and monetary relief, it initially appeared that the declaratory judgment rendered by the trial court in the present action would resolve the parties' dispute without any further litigation. In fact, the power company did not initially appeal from the court's judgment in the declaratory judgment action. See *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, supra, 279 Conn. 98–100, 102–103. Only after the parties' relationship deteriorated further amidst allegations of a lockout and failure to pay rent did Lighthouse resurrect its damages action and the power company seek permission to file a late appeal from the judgment in the declaratory judgment action.

present action are not saved from the preclusive effect of res judicata.[5]

## II

There is a second and, perhaps, even more fundamental reason why Lighthouse's claims are not barred by principles of res judicata. Section 26 of the Restatement (Second) of Judgments provides in relevant part: "When any of the following circumstances exists, the [doctrine of res judicata] does not apply to extinguish [a] claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

"(a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or

---

[5] The majority also asserts that "Lighthouse could have obtained the ruling that it now seeks by requesting an articulation from the trial court in the declaratory judgment action as to its other special defenses and by presenting those defenses to this court in [*Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, supra, 279 Conn. 90] as alternative grounds for affirmance." Under well established principles, however, Lighthouse, as the prevailing party, was under no obligation to seek an articulation. See, e.g., *Orcutt* v. *Commissioner of Correction*, 284 Conn. 724, 738–39 n.25, 937 A.2d 656 (2007) ("in the absence of an articulation—which the appellant is responsible for obtaining—we presume that the trial court acted properly"); *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 607, 710 A.2d 190 (1998) ("[t]he duty to provide [a reviewing] court with a record adequate for review rests with the appellant"); see also *Puris* v. *Puris*, 30 Conn. App. 443, 447 n.7, 620 A.2d 829 (1993) (describing appellee's filing of motion for articulation as "unusual but creative tactic"). Even more fundamentally, however, contrary to the reasoning of the majority, even if Lighthouse had filed such a motion, an articulation in the declaratory judgment action would not have afforded Lighthouse the relief that it seeks in its civil action, in which damages are sought for negligent and intentional misrepresentation and for violation of CUTPA. Because Lighthouse sought declaratory relief, rather than injunctive relief or damages, in the declaratory judgment action—specifically, a judgment declaring that the power company improperly had terminated the parties' lease—the articulation that the majority contemplates would have provided Lighthouse an answer *only* with respect to whether the trial court also agreed with it that the power company improperly had terminated the parties' lease for the reasons set forth in Lighthouse's other special defenses.

"(b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action . . . ." 1 Restatement (Second), supra, § 26.

The reason for this rule is self-evident. When parties agree to try claims arising out of the same transaction in separate proceedings, the public policy considerations behind the doctrine of res judicata, namely, repose and protecting defendants from vexatious or repetitive litigation,[6] no longer are implicated. In the present case, the power company, in its brief to this court, acknowledges that, "[s]hortly after Lighthouse filed its [civil] action [for damages, the power company] brought its [declaratory judgment] action seeking a declaration that it had properly exercised its right to terminate the lease, and that the lease was 'of no further force and effect.' [*Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*], supra, 279 Conn. 96. Lighthouse filed an answer, six special defenses and a counterclaim [seeking a declaratory judgment in its favor]. . . .

"*Upon agreement of both parties*, the trial court . . . consolidated the actions, and stayed Lighthouse's [civil] action [for damages] pending resolution of [the power company's] declaratory judgment action. [Id.] The parties then tried the declaratory judgment action to the court." (Emphasis added.) Thus, this case presents a classic example of the exception for cases in which the parties agree to proceed with the declaratory judgment action while holding in abeyance, for trial or resolution at a later date, the claims raised in the damages action. Indeed, in light of the procedural history in this case, it is abundantly clear that the power company never invoked the doctrine of res judicata as a defense to Lighthouse's civil action for damages because it knew

---

[6] See *Weiss* v. *Weiss*, 297 Conn. 446, 465, 998 A.2d 766 (2010) ("this court has identified the purposes of res judicata as promoting judicial economy, minimizing repetitive litigation, preventing inconsistent judgments and providing repose to parties").

full well that such a defense would not lie in view of the parties' agreement to consolidate their respective claims *and to try the power company's claim first.* See, e.g., 1 Restatement (Second), supra, § 26, comment (a) ("A main purpose of [res judicata] is to protect the defendant from being harassed by repetitive actions based on the same claim. The rule is thus not applicable [when] the defendant consents, in express words or otherwise, to the splitting of the claim."). Indeed, to conclude otherwise would amount to a judicially sanctioned ambush of Lighthouse, in contravention of § 26 of the Restatement (Second) of Judgments. This is so because, under the circumstances of this case, it reasonably cannot be argued that Lighthouse had an opportunity to bring all of its claims in an earlier action *but failed to do so.* See, e.g., *Migra* v. *Warren City School District Board of Education,* 465 U.S. 75, 77 n.1, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984) ("[c]laim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier [action]"); *Dunham* v. *Dunham,* 221 Conn. 384, 391–92, 604 A.2d 347 (1992) ("[t]he doctrine of res judicata provides that a former judgment serves as an absolute bar to a subsequent action involving any claims relating to such cause of action which were actually made or which might have been made" [internal quotation marks omitted]). On the contrary, as the power company readily acknowledges, Lighthouse brought all of its claims in an earlier action, those claims subsequently were consolidated with the power company's declaratory judgment action, and the parties then agreed to try the declaratory judgment action first. As a consequence, the doctrine of res judicata has no applicability to the present case.[7] For this reason, and for

[7] The majority asserts that the principle set forth in § 26 of the Restatement (Second) of Judgments, that is, when a party agrees to split claims arising out of a single transaction into separate proceedings, that party is barred from raising res judicata as a defense to the claims that are brought in the

the reasons set forth in part I of this opinion, I conclude that Lighthouse's misrepresentation and CUTPA claims are not barred by principles of res judicata. I therefore respectfully dissent.

subsequent proceeding, is inapplicable because Lighthouse filed its answer, special defenses and counterclaim in the declaratory judgment action "more than six weeks after the court stayed the civil [damages] action," and because, according to the majority, "Lighthouse requested equitable and legal relief in the declaratory judgment action . . . ." As I explained, however, Lighthouse requested only one type of relief, that is, declaratory relief. The majority cites no authority—because there is none—to support its conclusion that the nature of the *defenses* and *arguments* in a declaratory judgment action, and not the relief sought, is determinative with respect to the issue of whether the action will have preclusive effect on a subsequent action arising out of the same transaction. More importantly, however, the majority cites no authority to support its contention that, because Lighthouse filed its answer and special defenses in the declaratory judgment action after the parties had agreed to consolidate the actions but to try the claims separately, the parties' agreement to split the claims by staying the action for damages is somehow vitiated *sub silentio*. Indeed, if, as the majority contends, Lighthouse violated the parties' agreement and, therefore, forfeited the protections of § 26 of the Restatement (Second) of Judgments merely by filing its responsive pleading in the declaratory judgment action, one would have expected the *power company* to have raised the applicability of res judicata as a defense to Lighthouse's civil action for damages, not this court, sua sponte, many years later. Finally, even though, contrary to the majority's contention, Lighthouse *never* sought injunctive relief or damages in the declaratory judgment action, for purposes of applying § 26 of the Restatement (Second) of Judgments, it makes no difference what precise claims Lighthouse raised in defense of the power company's declaratory judgment action. This is so because, under that section, principles of res judicata are inapplicable when, as in the present case, the parties have agreed to split their claims. In sum, the majority's use of the doctrine of res judicata to bar Lighthouse from pursuing the present action is unfair to Lighthouse, which could not possibly have anticipated that, after agreeing

to a stay of its civil action for damages, this court effectively would void that agreement solely because Lighthouse, in accordance with that very agreement, had proceeded to litigate the declaratory judgment action first.